# Glass v. The State.

## *Murder.*

(Decided May 31, 1906.   41 So. Rep. 727.)

1. *Homicide; Evidence.*—From the time defendant appeared upon the scene of the killing, until the killing occurred, all the occurrences and conversations participated in by defendant were competent as evidence, which were shown to be parts of a continuous transaction, occurring within a brief space of time.

2. *Criminal Law; Conduct of Accused at Time of Arrest.*—Under the rule that the conduct and demeanor of a defendant at the time of his arrest are admissible against him, it is competent to show that at the time defendant was arrested he threw his hands behind him and drew a pistol.

[Glass v. The State.]

3. *Same; Evidence.*—It was improper to permit the state to show that a witness examined by it was summoned by the defendant, as the only purpcse for so doing was to prejudice the jury against defendant.

4. *Same; Remarks of Counsel.*—It was improper not to exclude remarks of the solicitor that defendant had killed deceased and left his three orphan children to charity or his friends, in the absence of such evidence.

5. *Same; Motive; Reusonable Doubt.*—A charge which asserts that if the state had failed to show a motive cn defendant's part to commit the offense, and his guilt was not clearly proven, then the absence of a motive, considered in connection with all the evidence in the case, might generate in the minds of the jury a reasonable doubt of defendant's guilt, was erroneous and properly refused.

6. *Same; Argumentative Instructions.*—A charge asserting that there was no evidence in the case that defendant did or said anything at a certain house near which the killing occurred that would have justified the deceased in striking defendant, was properly refused as argumentative.

7. *Homicide; Malevolent Spirit; Common Purpose; Evidence.*—Evidence that an hour or an hour and a half before the killing, while with another, defendant said that he was going over to a certain house near which the killing occurred and at which a dance was being had, and would dance or break it up, in connection with other evidence, was competent as showing a malevolent spirit on part of defendant, and as tending to show a common purpose on the part of defendant and a co-defendant to go to the house from an unlawful motive.

8. *Same; Preparation for Act.*—It was competent to show that half an hour before the homicide defendant borrowed a pistol as tending to show preparation.

9. *Same.*—It was competent to show that about the time of the difficulty a witness heard shots; that soon thereafter two men came running by from the direction of the scene of the homicide, that he heard one say "Wait F. J., I have killed one d—m scoundrel, and I will kill another if he runs up on me;" that the cne who spoke had a pistol in his hand; and that defendant's codefendant, Bedsole, was commonly called F. J."

10. *Same; Self Defense; Instructions.*—An instruction which asserts that if defendant was at fault in bringing on the difficulty, yet if he withdrew from it in good faith and was departing when deceased walked up to him and either pushed or knocked him down, and got down on him, and it appeared to defendant that he was in danger of great bcdily harm. and he could not have

retreated, defendant had the right to shoot deceased, was erro-
neous and properly refused; So, also, was an instruction assert-
ing that if the jury believed that defendant had had no difficul-
ty with deceased, and nothing was said or done by defendant to
deceased, and deceased came up to him and shoved or knocked
him down, and defendant could not have retreated, and it ap-
peared to defendant that he was in great danger of bodily harm
from deceased, then defendant had the right to shoot.

11.  *Witnesses; Impeaching Testimony; Showing Ill-will on Part of
     Witness.*—One of the defendant's witnesses having testified that
     he was a special friend of the deceased, it was proper to permit
     the solicitor to ask the witness if he had not been indicted in
     E. county for selling whiskey without license and requested
     the deceased to act as a witness for him, whereupon deceased
     replied that he would tell the truth to the disadvantage of wit-
     ness, and that since that time witness had been angry with
     deceased.

12.  *Same; Character for Truth and Veracity.*—A witness cannot be
     asked as to his own character for truth and veracity.

-13.  *Same; Scope of Redirect Examination.*—A witness for the state
     was asked, on cross examination, if he had ever had any trouble
     with defendant, and answered, ⅃es, in this way." On redirect
     examination the state had the right to show the nature of the
     difficulty without going into the details.


APPEAL from Montgomery City Court.

Heard before Hon. W. H. THOMAS.

J. D. Glass was convicted of murder, and appeals.
Nearly all the facts necessary to a proper understanding
of the case appear in the opinion. The witness Knight
was permitted to testify over the objection of the defend-
ant that he saw the defendant and Bedsole about an hour
and a half before the difficulty over at the new mill, and
that Glass said in Bedsole's presence that they were go-
ing over to Milner's house and dance, or break it up. The
witness Penler was allowed to testify that he heard the
shots, and soon thereafter two boys came running by his
house from the direction of Milner's, he living about three
doors below Milner, when he heard the one behind say,
"Wait, F. J.; I've killed one damn scoundrel, and I'll kill
another if he runs up on me;" that the one behind and
the one who called to "F. J." had a pistol in his hand.
The witness was further permitted to testify that Bed-
sole was commonly called "F. J." The solicitor asked

[Glass v. The State.]

the witness Carden, "Is it not a fact that you were indicted in Elmore county for selling whisky, and asked Mr. Rutherford to be a witness for you, and he said that he would tell the truth, and it would hurt, and you got mad with him about it and have been mad with him ever since?" Mr. Rutherford was the man alleged to have been killed. Objection to this question was overruled. The defendant inquired of witness Law on cross-examination, "Do you think you know your general character in the community in which you live?" "Is your character good or bad. in the community in which you live?" The court sustained the solicitor's objection to these questions.

The defendant requested the court to give the following charges, which were refused: "(4) If the defendant J. D. Glass was at fault in bringing on the difficulty, but withdrew from it in good faith and was departing, and the deceased came out of the witness Milner's house, walked up to the defendant Glass, and pushed or knocked him down, and got down on him, and it appeared to the defendant Glass that he was in danger of great bodily harm, and the defendant Glass could not have retreated, he had the right to shoot the deceased. (5) There is no evidence in this case that the defendant Glass did or said anything in Milner's house that would have justified the deceased, Rutherford, in striking him. * * * (11) If the jury believe from the evidence that the state has failed to show any motive on part of defendant Glass to commit the offense charged, and his guilt is not clearly proven, then this absence of motive may, when considered in connection with all the evidence in the case, generate in the minds of the jury a reasonable doubt of the guilt of the defendant Glass. * * * (28) If the jury believe from the evidence that the defendant Glass had had no difficulty with the deceased, and the defendant Glass was standing in the field opposite Milner's house, and went towards the deceased, and nothing was said or done by defendant Glass to the deceased, and the deceased shoved or knocked Glass down, and Glass could not have retreated, and it appeared to him that he was in danger of receiving great bodily harm from deceased, then he had the right to shoot."

HILL, HILL & WHITING, for appellant.—Appellant's objections to the questions asked the witnesses, Millner and Avant, should have been sustained.—*Horn v. The State,* 101 Ala. 144. Appellant's objection to the question asked Carden should have been sustained.—*O'Neal v. Curry,* 134 Ala. 216. The court erred in sustaining the objection to the question to the witness, Law.—*White v. The State,* 114 Ala. 10; *Ross v. The State,* 139 Ala. 144. The court erred in overruling defendant's objection to the question asked Kirby.—*Neilson v. The State,* 40 So. Rep. 222. The argument of the solicitor was improper.— *Lane v. The State,* 5 Ala. 11; *Coleman v. The State,* 87 Ala. 14; *Wolff v. Minnis,* 74 Ala. 386; *Anderson v. The State,* 104 Ala. 83; *Cross v. The State,* 68 Ala. 476; *Neilson v. The State, supra.* Charges 28 and 4 should have been given. Charge 11 should have been given.—*Clifton v. The State,* 73 Ala. 473.

MASSEY WILSON, Attorney General, for the State.—No brief came to the reporter .

DENSON, J.—The appellant, J. D. Glass, was jointly indicted and tried with one Frank Bedsole for the murder of Marshall Rutherford. The trial resulted in the acquittal of Bedsole and the conviction of Glass of murder in the second degree. From the judgment of conviction, Glass has appealed.

The killing was done by Glass with a pistol on the first night in May, 1905, in the city of Montgomery, on what is known as "Factory Row" and across the road from the house of James Milner. There was a dance in progress at Milner's house, and several persons were gathered there. Among them were the deceased and his three little girls. Besides there were a number of ladies in the house. All the occurrences and conversations of the evening from the time defendant Glass appeared at James Milner's house, until the killing of the deceased, and in which defendant Glass participated, were shown to be but parts of a continuous transaction, occurring within a brief space of time, and there was no error in permitting the state's witness James Milner to testify to them.—*Armor's*

[Glass v. The State.]

*Case,* 63 Ala. 173; *Stitt's Case,* 91 Ala. 10, 8 South. 669, 24 Am. St. Rep. 853; *Jordan's Case,* 81 Ala. 20, 1 South. 577, s. c. 79 Ala. 9; *Churchwell's Case,* 117 Ala. 126, 23 South. 72.

The defendant Glass was arrested several hours after the shooting by Policeman Avant, assisted by Policeman McDade. The fact that defendant threw his hands behind him and drew his pistol at the time of the arrest was properly allowed to be proved. The conduct and demeanor of defendant at the time of his arrest are competent evidence against him.—*Henry's Case,* 107 Ala. 22, 19 South. 23; *Bowle's Case,* 58 Ala. 335.

The declaration made by defendant Glass about an hour or an hour and a half before the killing, while he and defendant Bedsole were together, when taken in connection with the other evidence, was properly admitted as tending to show a malevolent purpose on the part of him and Bedsole to go to the dance for an unlawful purpose. Witness McHugh was permitted to testify that at McNeil's store, about a half hour before the shooting he saw defendant Glass whisper to one Redmond, and that immediately Redmond pulled his pistol out and gave it to Glass. This evidence was properly admitted. It tended to show preparation on the part of Glass.—*Ford's Case,* 71 Ala. 385; *Finch's Case,* 81 Ala. 41, 1 South. 565.

The motion to exclude the evidence of the witness Penler is so patently without merit as to require no discussion.—*Henry's Case,* 107 Ala. 22, 19 South. 23.

Defendant's witness Carden having testified that he was a special friend of the deceased, the state was properly allowed, against the objections made, to ask the question that was objected to. This question was asked for the purpose of showing enmity on the part of the witness, and thus to contradict his claim of special friendship. This is always allowable.—*McHugh's Case,* 31 Ala. 317; *Haralson's Case,* 82 Ala. 47, 2 South. 765; *Yarbrough's Case,* 71 Ala. 376; *Burke's Case,* 71 Ala. 377.

The witness cannot be interrogated with respect to his own general character for truth and veracity; and the court committed no error in its rulings on questions propounded on cross-examination by defendant to the witness Law.

[Glass v. The State.]

State's witness McSwain was asked on cross-examination this question: "Did you ever have any trouble with him (defendant)?" The witness answered, "Yes, in this way." The bill of exceptions recites that counsel for defendant refused to let the witness state what the trouble was. The solicitor then asked the witness this question: "Explain what the trouble was." It may be that illegal evidence would have been responsive to the question, and the court cannot be put in error for sustaining an objection to such a question.—*Ross' Case,* 139 Ala. 144, 36 South. 718. But when the question also calls for evidence which would be competent, and the court overrules an objection to it, the court will not be put in error for the ruling, and if illegal evidence is embraced in the answer the remedy is by motion to exclude. It is apparent that the state had the right to show whether the trouble was a fight, a personal difficulty, or other kind of trouble, without going into details.—*Jones' Case,* 76 Ala. 8. There was no motion to exclude, and we need not consider the answer to the question.

That Mrs. Kirby had been summoned as a witness in behalf of the defendant was immaterial, and the solicitor was improperly allowed to show that fact by her. As has been recently said by us, the only possible purpose of such a question and its answer was to prejudice the jury against the defendant.—*Neilson's Case,* (Ala.) 40 South p. 221.

The record contains no evidence that the deceased's three children were left to charity or his friends, and yet the solicitor stated in his argument to the jury: "The defendant has taken the life of Rutherford, and left his three orphan children to charity and to his friends." This cannot be considered as a mere inference, but is the statement of a fact, and the court should have excluded that part of the statement embraced in defendant's motion. —*Neilson's Case, supra; Wolff v. Minnis,* 74 Ala. 386; *Davis. v. Common Council of Alexander City,* 137 Ala. 206, 33 South. 863.

Charges 28 and 4, requested by the defendant, were properly refused,—*McClellan's Case,* 140 Ala. 99, 37 South. 93:

[Parham v. The State.]

Charge 11 was properly refused.—*Jackson's Case*, 136 Ala. 22, 34 South. 188; *Hornsby's Case*, 94 Ala. 55, 10 South. 522; *Griffith's Case*, 90 Ala. 583, 8 South. 812.

Charge 5 was argumentative, and was properly refused.

The affirmative charge requested by defendant is absolutely without merit.

For the errors pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

WEAKLEY, C. J., and HARALSON and DOWDELL, JJ., concur.