(93 South. 548)

## ALABAMA POWER CO. et al. v. TALMADGE. (2 Div. 738.) *

(Supreme Court of Alabama. Oct. 27, 1921. Rehearing Granted Nov. 10, 1921. Rehearing Denied Dec. 22, 1921.)

1. Judgment ☞239—Where complaint alleged concurrent negligence against defendants, verdict for one defendant did not preclude rendition of verdict against other defendant.

In action against a plumbing company and a gas company for death by asphyxiation, in which the complaint alleged that the plumbing company had negligently installed a gas appliance and that the gas company negligently caused gas of an unusually high pressure to be transmitted through the appliance and that the ·death was the proximate result of said negligence of said defendants, a verdict for the plumbing company did not preclude judgment on a verdict against the gas company.

2. Gas ☞20(1)—Complaint charging gas company with negligence in causing unusual pressure of gas through instantaneous heater held to state cause of action for death by asphyxiation.

In action for death caused by asphyxiation against gas company, complaint, alleging that the company, with knowledge that the deceased was using an instantaneous heater, so negligently conducted its business that as a proximate result thereof an unusual quantity or quality of gas, or gas of an unusually high pressure was transmitted through its pipes, through the instantaneous heater, proximately causing poisonous gases to be emitted to such an extent that the deceased was overcome by the gases, held sufficient to state a cause of action.

3. Gas ☞20(4)—Whether defendant was engaged in operation of gas plant at time of asphyxiation of plaintiff's intestate held for jury.

In action for death caused by asphyxiation, whether one of the defendants was engaged in the operation of a gas plant at the time of the accident, under a contract with the other defendant, held for the jury.

4. Evidence ☞244(2)—Declarations of officer of corporation not competent against corporation unless made within scope of authority or while in transaction of the corporation's business.

The declarations of an officer of a corporation are not competent evidence against the corporation, unless made within the scope of his authority and while in the transaction of the corporation's business.

5. Corporations ☞432(1) — Declarations by officer presumed to have been made while officer was engaged in and about the corporation's business.

The declarations of an officer of a corporation are presumed to have been made while the officer was engaged in and about the corporation's business, in the absence of countervailing evidence.

6. Evidence ☞519—Expert's opinion as to efficient and safe pressure of gas in pipes of gas company for domestic consumption held admissible.

In an action for death caused by asphyxiation against gas company claimed to have been negligent in causing an excessive flow of gas through an instantaneous heater, the testimony of a witness, who was an expert in the manufacture and distribution of gas for heating, as to what in his opinion would be an efficient and safe pressure of gas in the pipes of the defendant company for domestic consumption, held admissible.

7. Evidence ☞514(1) — Expert testimony as to whether it was safe to use instantaneous heater with specified pressure of gas held admissible.

In an action against a gas company for death caused by asphyxiation, in which it was claimed that the company was negligent in causing gas of an excessively high pressure to be transmitted through an instantaneous heater, testimony by expert in the manufacture and distribution of gas for heating as to whether it was safe to use an instantaneous heater with specified pressure of gas held admissible.

8. Gas ☞20(2)—In action for asphyxiation caused by unusual pressure of gas evidence as to absence of automatic governor at defendant's plant held admissible.

In action against gas company for death caused by asphyxiation, in which it was claimed that the company was negligent in causing gas with an unusually high pressure to be transmitted through pipes to instantaneous heater, in which there was expert testimony showing that well-regulated gas plants used an automatic governor for the regulation of pressure, testimony that witness visited defendant's plant five days after the death of plaintiff's intestate, and that there was no regulator in use, held admissible; the absence of the governor being a circumstance from which the jury might have inferred negligence.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed 258 U. S. —, 42 Sup. Ct. 463, 66 L. Ed. —.

9. Gas ⟪⇒20(2)—Evidence that many instantaneous gas heaters had been installed held admissible in action for asphyxiation in use of one.

In action for death caused by asphyxiation, in which it was claimed that the defendant gas company was negligent in causing gas with excessive pressure to be transmitted through an instantaneous heater, testimony that a large number of heaters of the same description as that used by plaintiff's intestate had been connected with the same gas supply and so used for many years *held* not error.

10. Appeal and error ⟪⇒880(2)—Admission of evidence against defendant for whom verdict was rendered not considered on appeal by other defendant.

In action for death caused by asphyxiation against plumbing company and gas company, in which there was a verdict for the plumbing company, admission of evidence against the plumbing company will not be considered on appeal by the gas company.

11. Evidence ⟪⇒471(12) — Question as to whether plumbers were reputable held not objectionable as calling for conclusion.

In action for death caused by asphyxiation, in which it was claimed that defendant gas company was negligent in causing gas with excessive pressure to be transmitted through instantaneous heater, question as to whether the plumbers who installed the instantaneous heater were reputable plumbers *held* not objectionable as calling for a conclusion.

12. Trial ⟪⇒75—Objection to question on specific ground waived other grounds of objection.

Objection to a question on the ground that it called for a conclusion constituted a waiver of other grounds of objection if any existed.

13. Evidence ⟪⇒358 — Diagram of gas plant from information obtained 12 months before accident held admissible to show conditions at time of accident.

In an action for death caused by asphyxiation, in which it was claimed that defendant gas company was negligent in causing gas of excessive pressure to be transmitted through instantaneous heater, a diagram showing the arrangement of the supply pipes and the means of pressure control used at the defendant's gas plant made from information obtained by witness proximately 12 months before the death of the intestate *held* admissible; it being presumed that there was a degree of permanence in the arrangement shown.

14. Appeal and error ⟪⇒232(1) — Appellant could not avail itself of objection taken by co-defendant who did not appeal.

In an action against a plumbing company and a gas company for death caused by asphyxiation, in which the defendants conducted their defenses separately and in which the jury rendered a verdict for the plumbing company and against the gas company, the gas company could not on appeal avail itself of an objection taken by the plumbing company only.

15. Evidence ⟪⇒493—Refusal to allow lay witness not present at accident to state opinion as to the cause thereof held proper.

In action for death claimed to have been caused by asphyxiation, the court properly refused to allow a witness who was not a physician nor present at the time of the accident, or shown to have known anything about the physical condition of the deceased before death or of the body after death, to state what in his opinion was the cause of the injury.

16. Appeal and error ⟪⇒1058(2)—Exclusion of answer not error where same information given in answer to other question.

Exclusion of answer to certain question *held* not error, where immediately thereafter the witness gave the same information in answer to a differently worded question.

17. Evidence ⟪⇒514(1)—Expert testimony as to operation of instantaneous heater alleged to have caused accident held admissible.

In prosecution for death caused by asphyxiation, in which it was claimed that defendant gas company had been negligent in causing gas of excessive pressure to be transmitted through instantaneous heater, where witnesses for the gas company had testified that carbon monoxide is generated or released when gas flame comes in contact with a cold surface, testimony of a witness who had much experience with similar heaters that it was not possible for the flame from the burner to come in contact with or impinge upon or touch a cold surface, and that with a proper adjustment of the heater, the flame from the burner did not touch any object, *held* admissible.

18. Evidence ⟪⇒507—Expert may give opinion as to ordinary affairs of life.

A witness may have expert knowledge of some of the ordinary affairs of life and may testify to opinions gained by experience and acquaintance not common to others.

19. Evidence ⟪⇒514(1)—Expert witness properly permitted to testify as to usage of well-conducted gas companies as to controlling pressure in gas mains.

In action for death caused by asphyxiation, in which the defendant gas company was claimed to have been negligent in causing gas with excessive pressure to be transmitted through pipes through instantaneous heater, an expert gas engineer with much experience was properly permitted to testify as to the usage of well-conducted gas companies in the matter of providing for the control of mains under conditions similar to those in city in which defendant company had its gas plant.

20. Gas ⟪⇒20(4)—Whether gas company was negligent in causing gas with excessive pressure to be transmitted through pipes held for jury.

In action against gas company for death caused by asphyxiation, in which it was claimed that the company was negligent in causing gas with excessive pressure to be transmitted through instantaneous heater, the question of the company's negligence *held* for the jury.

---

⟪⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

## On Rehearing.

**21. Evidence** ⚖︎⇒77(3)—**Rule that jury may infer that evidence of available witness would have been unfavorable to party not applicable where party would expect witness to be produced.**

The rule that, where a witness is available to a party, the jury can infer from the failure of the party to call the witness that his testimony if produced would be unfavorable to, such party, does not apply where the available witness would be likely to be produced against such party.

**22. Death** ⚖︎⇒99(1)—**Verdict for more than $17,500 held excessive.**

In an action for death under Code 1907, § 2486, the verdict for more than $17,500 *held* so excessive as to evidence the fact that the jury were influenced by passion, prejudice, or other improper motive.

**23. Appeal and error** ⚖︎⇒1140(1)—**Where verdict is excessive, Supreme Court will fix proper amount and affirm judgment if plaintiff remits amount in excess thereof.**

In action for death under Code 1907, § 2486, the Supreme Court will not reverse the judgment for excessiveness of the verdict, but will under Acts 1915, p. 610, fix upon the amount of the verdict and affirm the judgment, if plaintiff remits damages in excess thereof.

**24. Death** ⚖︎⇒85, 89—**Pecuniary loss or mental suffering not elements of damages.**

In action for death under Code 1907, § 2486, pecuniary loss or mental suffering are not to be considered.

**25. Appeal and error** ⚖︎⇒2—**Constitutional law** ⚖︎⇒249, 316—**Statute authorizing Supreme Court to reduce amount where verdict is excessive and affirm on condition plaintiff remits excess held not unconstitutional.**

Acts 1915, p. 610, authorizing the Supreme Court to fix the amount of the judgment where of the opinion that the verdict was excessive and affirm the judgment for such amount if plaintiff remits the excess, *held* not to deprive the defendant of either due process nor equal protection of the law, nor to in any wise contravene the Constitution of the state.

Appeal from Circuit Court, Dallas County; A. M. Pitts, Special Judge.

Banks S. Talmadge, suing as administrator, recovered judgment for the wrongful death of his intestate; and defendants the Alabama Power Company and the Selma Lighting Company. appeal. Reversed and remanded conditionally.

The complaint avers the occupation by plaintiff and his intestate of certain described premises in the city of Selma; that said premises had installed therein "an appliance or apparatus known as an instantaneous water heater, which was installed by said defendant, Reeves Electric & Plumbing Company, for the purpose of heating water for bathing and other purposes in a bathroom by the use of gas, and plaintiff avers that said defendant, Reeves Electric & Plumbing Company, well knew the use to which said apparatus would be put and negligently furnished in the room of said building to be used by said plaintiff's intestate an instantaneous heater which was not provided with a vent and which was not properly adapted or adjusted to the flow of gas or kind of gas furnished for use in said building; that said defendant, Alabama Power Company, under the name of Selma Lighting Company, or through its agent, Selma Lighting Company, was engaged in the business of furnishing gas to the public generally in the city of Selma on January 30, 1920, and for some months prior thereto, and was engaged in a public service, and prior to January 30, 1920, said last-named defendant undertook the duty of furnishing to the said Banks S. Talmadge and Pauline Talmadge and the members of their household for use in said instantaneous heater a flow of gas which was reasonably suited to be used in said heater and which was reasonably safe; that said defendants, Alabama Power Company and Selma Lighting Company, had knowledge that the said plaintiff's intestate and said Banks S. Talmadge were using said instantaneous heater and knew its condition with gas furnished by said Alabama Power Company and said Selma Lighting Company in the manner above averred. Plaintiff further avers on said 30th day of January, 1920, the said defendants, Alabama Power Company and Selma Lighting Company, so negligently conducted their business that, as a proximate result of said negligence, an unusual quantity or quality of gas, or gas of an unusually high pressure, was transmitted or allowed to flow through the pipes of said last-named defendants through said instantaneous heater so negligently furnished and provided by defendant Reeves Electric & Plumbing Company; that as a proximate result of said negligence of said three defendants poisonous gases were emitted in said apartment to such an extent that the said Pauline Talmadge was overcome and killed by said gases to the damage of the plaintiff," etc.

Defendants' motion to strike the complaint was upon the ground that "said complaint fails to state any cause of action."

Grounds of demurrer insisted upon and treated in the opinion are:

"(6) It appears from the complaint that it was the use of a defective heater by the plaintiff's intestate that caused her death, and not the flow or quality of gas."

"(14) For that it appears from the complaint that the alleged negligence of this defendant was not the proximate cause of the injury complained of.

---

⚖︎⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(15) For that it appears from the complaint that the alleged negligence of this defendant was not the efficient cause of the injury complained of."

Louie Bennish, a witness for the plaintiff, testified that he was mayor of the city of Selma on July 31, 1919, and until some time in October, 1920; that witness, accompanied by the city attorney on July 31 or August 1, 1919, went to Montgomery and met T. W. Martin, vice president of the Alabama Power Company, and one Mitchell, also an official of that company, for the purpose of making a contract with the Alabama Power Company for the lighting of the city. Witness further testified to the effect that he and his associate were given to understand by said official of the power company that the Alabama Power Company was "going to operate the plant" of the Selma Lighting Company; and that it was "our main purpose to get together on * * * the contract." The witness further testified that it was his recollection that Martin and Mitchell told him they were going to operate the plant of the Selma Lighting Company; that "they" (Martin and Mitchell) "had a telegram that the deal had been closed, and it was our purpose to amend the preliminary contract that they had submitted to the city on which we got together later on."

The question made the subject of the thirty-seventh assignment of error, referred to in the opinion, was as follows:

"Now, Mr. Burns, supposing that a rapid heater, model C, had been installed in Selma on December 9, 1918, and on that day the pressure was not allowed to fall below three inches and not allowed to exceed five inches, and supposing further that that heater was properly installed and properly adjusted at that time to the flow and quality and pressure of gas then being furnished to it, would or not in your opinion that heater have been safe for use on that day?"

The question made the subject of assignment of error 75 was:

"I will ask whether in your opinion there is a danger to human life in the operation of a water heater in a bathroom that has little or no ventilation without the use of a vent pipe that will void out into the open?"

Section 1 of the Act of 1915 (page 610), under the authority of which the court reduced the judgment and conditionally reversed the same, reads as follows:

"That when an appeal is taken to the Supreme Court or Court of Appeals from the judgment of any court, and the Supreme Court or Court of Appeals shall be of the opinion that the case should be reversed because the judgment of the lower court is excessive and that there is no other ground of reversal, the Supreme Court, or the Court of Appeals, shall notify the appellee of the amount which it deems in excess of the just and proper amount of recovery, and require the appellee within a time to be stated in said notice to remit such amount upon penalty of a reversal of the case. If the appellee does not within the time stated in such notice, or within such further time as may be granted by the court for good reason, file a remittitur of such excessive amount the court shall reverse and remand the case; but if the appellee shall file with the court a remittitur of the amount deemed excessive by the court, the court shall reduce the amount of the judgment accordingly and shall affirm the case and enter a judgment for such reduced amount, which judgment so entered shall be and remain the judgment of the lower court and shall date back to the time of the rendition of the judgment in the lower court."

Hugh Mallory, of Selma, Perry W. Turner, of Birmingham, and J. J. Mayfield, of Montgomery, for appellants.

The court erred in overruling demurrers to the complaint and in refusing motion to strike. 164 Ala. 23, 51 South. 303; 179 Ala. 274, 60 South. 262; 183 Ala. 277, 61 South. 80, Ann. Cas. 1916A, 543; 170 Ala. 535, 54 South. 280; 93 Va. 189, 24 S. E. 833; 143 Mo. App. 17, 122 S. W. 348; 4 Ga. App. 113, 60 S. E. 1075; 91 Ala. 382, 8 South. 798.

Arguing the question of agency, counsel insist that, in the absence of evidence of his authority in that respect, Martin, vice president of defendant Alabama Power Company, in his statements with respect to the operation of the Selma Lighting Company plant by the Alabama Power Company, did not speak for or bind defendant Power Company. 114 Ala. 444, 21 South. 960; 122 Ala. 228, 25 South. 187; 14a Corp. Jur. p. 94. Declarations of one professing to act as agent are inadmissible against principal, without independent proof of agency. 156 Ala. 369, 47 South. 48; 96 Ala. 255, 11 South. 280; 107 Ala. 640, 18 South. 266; 77 Ala. 184; 152 Ala. 166, 44 South. 627, 12 L. R. A. (N. S.) 389; 111 Ala. 453, 17 South. 934; 128 Ala. 666, 29 South. 651; 148 Ala. 448, 42 South. 735; 2 C. J. 935; 24 Ala. 369.

The court erred in admitting testimony by the witness Burns with respect to gas pressure. 178 Ala. 600, 59 South. 438; 130 Ala. 66, 30 South. 413; 143 Ala. 194, 38 South. 855; 187 U. S. 159, 23 Sup. Ct. 72, 47 L. Ed. 119; 219 Mass. 528, 107 N. E. 433; 127 Ala. 14, 28 South. 687; 90 Ala. 325, 8 South. 46; 192 Ala. 456, 68 South. 281. There was error in permitting evidence showing comparison of pressure prior to and on date of injury. The court erred in allowing appellee's question to witness Dozier: "You were discharged from their employ, were you not?" 147 Ala. 50, 41 South. 727; 146 Ala. 683, 40 South. 221.

The prejudicial effect of evidence of witnesses that they were overcome at same time of intestate's asphyxiation and under similar circumstances was not removed by later exclusion. 100 Ala. 37, 14 South. 554;

200 Ala. 111, 75 South. 487; 12 Ala. 823, 46 Am. Dec. 280; 24 Ala. 241; 30 Ala. 92, 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565; 94 Ala. 89, 10 South. 509; 11 Ala. App. 644, 66 South. 942; 38 Cyc. 1443.

The court erred in permitting the question "Are Reeves Electric & Plumbing Company reputable plumbers?" 87 Ala. 708, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84. It was error to admit pressure charts prior to and subsequent to injury. 38 Ala. 171; 93 Ala. 59, 9 South. 541. It was error to refuse hypothetical questions to witness Phillips. 128 Ala. 313, 29 South. 562; 190 Ala. 53, 66 South. 653; 194 Ala. 273, 69 South. 926.

The following argument of counsel for plaintiff was objectionable: "We have got a perfectly good rule over here in Georgia, gentlemen. I don't know whether it applies in Alabama, but I think it does. Where a party is able to produce it, and they do not produce it, then the inference is against them." 91 Ala. 584, 8 South. 719; 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037; 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543; 11 Ala. App. 644, 66 South. 942; 62 Ala. 154; 190 Ala. 22, 67 South. 583; 161 Ala. 585, 50 South. 70; 127 Ala. 589, 29 South. 16; 126 Ala. 96, 27 South. 760. And its effect was not removed by the court's language as follows: "Gentlemen of the jury, you have no right to consider the fact that the Selma Lighting Company, or the Alabama Power Company, did not put any witness on the stand." 11 Ala. App. 644, 66 South. 942; 74 Ala. 386; 104 Ala. 471, 16 South. 538, 203 Ala. 486, 84 South. 266.

Appellants were entitled to judgment non obstante veredicto, appellee having failed to prove concurring negligence alleged in the complaint. 123 Ala. 246, 26 South. 349; 94 Ala. 413, 10 South. 274; 97 Ala. 261, 12 South. 714; 198 Ala. 469, 73 South. 648, and cases cited, 167 Ala. 268, 52 South. 648; 146 Ala. 427, 40 South. 934.

The act of 1915, under which conditional reversal was here entered, is unconstitutional and void. 186 Mo. App. 296, 172 S. W. 55; 114 Minn. 247, 130 N. W. 1021; (C. C.) 51 Fed. 747, 50 Colo. 390, 115 Pac. 901, 39 L. R. A. (N. S.) 1064, Ann. Cas. 1912C, 504; 120 Fed. 487, 56 C. C. A. 637.

Ogden Persons, of Forsyth, Ga., and Pettus, Fuller & Lapsley, of Selma, for appellee.

The complaint was not subject to the demurrers. 123 Ala. 233, 26 South. 349; 27 Ind. App. 219, 59 N. E. 412; 111 Ala. 337, 19 South. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59; 43 S. D. 581, 181 N. W. 198; 145 Minn. 100, 176 N. W. 169; 48 Ind. App. 319, 95 N. E. 680; 139 Ala. 161, 34 South. 390.

General charge for defendant Alabama Power Company was properly refused. 21 R. C. L. 820; 7 R. C. L. 452; 115 Ala. 334,

22 South. 163; 85 Ala. 600, 5 South. 353; 202 Ala. 552, 81 South. 58.

Evidence of asphyxiation of others was admissible. 93 Ala. 133, 9 South. 525; 94 Ala. 636, 10 South. 280; 112 Ala. 98, 20 South. 424; 124 Ala. 486, 26 South. 914; 202 Ala. 246, 80 South. 88.

Argument of counsel for plaintiff was not objectionable. 2 R. C. L. 412; 100 Ga. 187, 28 S. E. 104.

There was no variance, entitling appellants to be discharged. 199 Ala. 631, 75 South. 14; 162 Ala. 570, 50 South. 293; Code 1907, § 2504; 234 Ill. 526, 85 N. E. 332, 17 L. R. A. (N. S.) 852; 167 Ala. 274, 52 South. 648, 228 U. S. 380, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

SAYRE, J. Appellee, as administrator of Pauline Talmadge, deceased, brought this action under section 2486 of the Code to recover damages for the alleged wrongful act, omission, or negligence of appellants Alabama Power Company and Selma Lighting Company whereby the death of his intestate was caused. Reeves Electric & Plumbing Company was also joined as party defendant, but the jury returned a verdict in favor of that company. Judgment for plaintiff went against the other named defendants who prosecute this appeal. Errors are severally and separately assigned and argued.

[1] It is argued that the court should have stricken the complaint. The motion to strike proceeded on the theory that the complaint, as against these appellants, stated no cause of action since it showed on its face that what they did was not the proximate cause of the injury complained of. Otherwise stated, the argument is that, no relation being shown between appellants and the plumbing company, appellants are not alleged to have done more than furnish the condition upon which the unanticipated negligence of the plumbing company, which is alleged to have furnished a defective heater, operated to the hurt of plaintiff's intestate. This objection was proper to be taken by demurrer (Brooks v. Continental Ins. Co., 125 Ala. 615, 29 South. 13); but, since substantially the same question was raised by demurrer, we now state our conclusion. The complaint, as amended, consisting of a single count, does not allege community of purpose between these appellants and the plumbing company; does not allege joint negligence; but it does show that at the moment of the injury to plaintiff's intestate the several acts of commission and omission charged to the defendants converged to the production of that injury. All the original parties defendant are thus alleged to have been guilty of concurrent negligence, and were liable in a joint action though they had no common purpose and there was no concert of action. 1 Jaggard on Torts, pp. 212, 213. And in such case the parties de-

fendant may be held responsible jointly or severally for the injury. Thompson v. L. & N. R. Co., 91 Ala. 501, 8 South. 406, 11 L. R. A. 146; Western Assurance Co. v. Hahn, 201 Ala. 376, 78 South. 232; Home Tel. Co. v. Field, 150 Ala. 306, 43 South. 711; Western of Ala. v. Sistrunk, 85 Ala. 352, 5 South. 79. In view of the foregoing statement of the law, these appellants, on the facts alleged in the complaint, were guilty of negligence proximately contributing to the death of plaintiff's intestate even though it be said they created a condition only. That, however, was a question for the jury. There was no error in this ruling.

[2] Both appellants demurred on the ground—to state it in general terms—that the facts alleged in the complaint failed to show a case of negligence. The allegation of the amended complaint is that "said defendant, Alabama Power Company, under the name of Selma Lighting Company, or through its agent, Selma Lighting Company, was engaged in business of furnishing gas to the public in the city of Selma"; that the plumbing company had installed an instantaneous water heater in the bathroom of the apartment occupied by plaintiff, whose wife deceased was; "that said defendants, Alabama Power Company and Selma Lighting Company, had knowledge that the said plaintiff's intestate and said Banks S. Talmadge were using said instantaneous heater (and knew its condition) with gas furnished by said Alabama Power Company and said Selma Lighting Company in the manner above averred;" and that "the said defendants, Alabama Power Company and Selma Lighting Company, so negligently conducted their business that as a proximate result of said negligence, an unusual quantity or quality of gas, or gas of an unusually high pressure, was transmitted or allowed to flow through the pipes of said last-named defendants through said instantaneous heater so negligently furnished and provided by defendant Reeves Electric & Plumbing Company, that as a proximate result of said negligence of said three defendants, poisonous gases were emitted in said apartment to such an extent that the said Pauline Talmadge was overcome and killed by said gases." The substance of the argument on this point is that the particular facts alleged do not suffice to impute negligence, since a pressure merely unusual, for aught the court knows or for aught appearing by the complaint, might be used with perfect safety, and that the particular fact alleged can have no help from the general averment that defendants negligently conducted their business, etc. B. R. L. & P. Co. v. Weathers, 164 Ala. 23, 51 South. 303, B. R. L. & P. Co. v. Parker, 156 Ala. 251, 47 South. 138, and other cases in the same line, are cited. But the complaint shows that defendants were under a duty to furnish gas, that the result of what they did was to emit poisonous gas in the apartment occupied by deceased, and that her death resulted. This, we think, sufficed to sustain the general allegation that defendants negligently conducted their business with the result aforesaid, and this, on the principle declared in Leach v. Bush, 57 Ala. 145, and followed in many subsequent cases (10 Mich. Dig. p. 145), must suffice to sustain the complaint. If the complaint be held to allege particular facts in apposition to the general charge of negligence, still the fact that defendants were under duty to furnish gas and did furnish gas in a manner to generate poisonous gases in the apartment occupied by deceased, resulting in her death, are quite enough, per se, to impute actionable negligence to defendants. B. Ry. L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543; B. Ry. L. & P. Co. v. Jordan, 170 Ala. 530, 54 South. 280.

[3-5] In the next place, the argument for appellant Alabama Power Company is that the gas which, by reason of defective or incomplete combustion, liberated carbon monoxide, and so caused the death of plaintiff's intestate, was furnished by the Selma Lighting Company, and that the responsibility of the power company for the act of the lighting company is not shown by any evidence, and hence that the power company should have had the general charge. This point is most seriously insisted upon. Its decision has involved consideration of much of the evidence adduced by the parties. A statement of every element of fact entering into the question cannot be made within permissible limits. It must suffice to say that after due consideration the court is of opinion that at the time of the death of plaintiff's intestate—which, unquestionably, resulted from asphyxiation by carbon monoxide given off by the imperfect or incomplete combustion of gas furnished to a so-called instantaneous water heater in the intestate's bathroom—plaintiff had a contract with the lighting company under which said company for more than twelve months had furnished and, for aught plaintiff knew, was furnishing gas to the heater. But we do not doubt the fact to be that at the time of the wrong and injury complained of appellant power company had acquired control of the lighting company and was operating it under some arrangement or contract the precise nature of which was not disclosed—though it rested, of course, in the peculiar knowledge of the parties appealing—nor is it of consequence what the arrangement or contract was. We by no means overlook the principle that the declarations or conduct of one professing to act as agent of another cannot be received as evidence against the principal without independent proof of his agency. Union Naval Stores Co. v. Pugh, 156 Ala. 369, 47 South.

48. There was such independent proof—enough at least to take the question to the jury. There was competent evidence tending to show that Thomas W. Martin and one Wilson were respectively vice president of the defendant power company and manager for defendant of the gas and lighting plant at Selma. Mr. Turner, who appeared as attorney of record for the power company, and other witnesses, testified to these facts. And this testimony, in connection with the declarations of these alleged agents, was quite enough to take the question of their authority to the jury. Cases cited 11 Mich. Dig. p. 52, § 14. Nor do we overlook the rule that declarations of an agent or officer of a corporation are not competent evidence against his principal unless made within the scope of his authority and while in the transaction of the business of the principal. Union Naval Stores Co. v. Pugh, supra. Martin was shown to be the chief executive officer of the power company in this state, its vice president; and his declarations, tending to connect the power company with the operation of the gas and lighting plant before and at the time of the death of plaintiff's intestate, were made in the course of a negotiation the purport of which was to transfer the ownership and management of the lighting company to the power company. The presumption, in the absence of countervailing evidence, is that the declarations in question were made while the declarant was engaged in and about the business of the power company. 7 R. C. L. § 436, p. 452; Ala. City, etc., R. Co. v. Kyle, 202 Ala. 552, 81 South. 54. If there were in defendant's charter limitations on the power of its vice president in the premises, or if there existed other reason why defendant should not be bound by what was said and done by its agents on the occasion testified to, there was at least enough before the court to put defendant upon proof of the facts. Our judgment is that there was no error in the trial court's refusal of the general affirmative charge requested by the Alabama Power Company.

[6] The witness Burns was an expert in the matter of the manufacture and distribution of gas for heating. He had familiarized himself with pertinent conditions in Selma. Over appellants' objection, he was allowed to testify as to what in his opinion would be an efficient and safe pressure of gas in the supply pipes of the local gas company for domestic consumption. There was much evidence as to the usual pressure and as to the pressure at the very time of the accident in question; plaintiff's contention being that the pressure at the moment had been unsafely and negligently augmented to a point, in view of conditions known to appellants, greatly dangerous to the users of instantaneous water heaters. The point taken against the ruling here is that any testimony as to efficient pressure was irrelevant and prejudicial. There was no error. Appellants could not maintain their plant without an efficient pressure, could not well be charged, therefore, with negligence in maintaining a pressure no more than efficient. In determining the question of negligence it was well for the jury to know at what point efficiency was passed and negligence begun.

[7] There was evidence going to show that instantaneous water heaters, of which were quite a number of the same sort as that used in plaintiff's apartment, were in use in Selma, all getting their supply of gas from the pipes of appellants—for there were none other—and adjusted to use gas within a certain range of pressure. There was also evidence from which the jury were authorized to find that a sudden access of pressure greatly in excess of that to which the heaters were adjusted was dangerous, and plaintiff's theory of the case was that appellants had permitted just that thing to happen on the day of the death of plaintiff's intestate, and that was substantially the cause of action alleged in the complaint. In these circumstances it was obviously relevant and material to show—as plaintiff undertook to do by pressure charts kept by appellants—that on the date in question, January 30, 1920, there had been a great increase in pressure. Also without error plaintiff was allowed to show the pressure of gas on December 9, 1918, the date on which the heater in plaintiff's apartment was installed, and that it was then safe and efficient for use in instantaneous heaters, meaning—since the other evidence excluded any other meaning—heaters like that in plaintiff's apartment and adjusted as it was, and, in connection with other tendencies of the evidence, to which we have referred, tended to show an increase in pressure at the time in question and its danger. True, the pressure at the heater was affected by the size of the mains that carried the gas, its distance from the plant, and the amount being used at the moment throughout the territory supplied, and perhaps by other factors of lesser consequence; still the pressure at the plant, the pressure shown by the several charts in evidence, was, of course, an essential factor of the pressure at the heater and proof of it was proper. We find no error in allowing the question made the subject of the thirty-seventh assignment of error and argued in this same connection. In fact, the question answers itself and the answer proved nothing.

[8] Expert testimony showed the propriety of using an automatic governor for the regulation of pressure in gas plants, such being the practice of well-regulated plants of the kind, and that such a governor had been in use both before and after the accident resulting in the death of plaintiff's intestate.

It was not wholly irrelevant to show that when the witness Burns visited the plant five days after the death of plaintiff's intestate there was no regulator in use, that he inquired about a governor, but saw none. The absence of the governor at the time of the accident was a circumstance from which the jury may have inferred negligence, and such absence a few days thereafter, though collateral to the question at issue, was connected with that issue by the probability, founded upon human experience, that if appellants had a proper governor in operation at the time of the accident, such evidence of due care would not have been so soon removed.

By a series of questions, to which objections were overruled, plaintiff was permitted to show by competent witness that, if the heater on the day of its installation was adjusted to a certain pressure, which was safe, it would be an improper and unsafe practice to increase the pressure to a certain other named greater pressure without a readjustment of the heater. These questions hypothesized facts which there was evidence tending to prove, and it follows from what has heretofore been said that their allowance was not error.

The witness Dozier was called to testify for the plaintiff. He had been employed by the defendant lighting company at its plant prior to the time of the accident in question. Plaintiff, by way of introducing the witness, was allowed to ask him whether he had not been discharged from his employment, and the witness, over appellant's objection, was allowed to answer in the affirmative. The argument for appellants is that this evidence was irrelevant and tended to prejudice appellants in the judgment of jurors. This argument is based upon what transpired in the further progress of the examination. The conclusion is strained, we think; but whether so or not, the matter at the time of the exception reserved stood as has been stated, and at that time the appearance was simply that plaintiff was attempting to forestall the effect of a circumstance which he might well expect would be developed by defendants—a matter which, ordinarily, might be considered as evidencing a bias against defendants, or one of them, and so as affecting the weight of his testimony. A very different question was involved in Glass v. State, 147 Ala. 50, 41 South. 727, and Neilson v. State, 40 South. p. 221, reported officially in a memorandum, 146 Ala. 683.

[9, 10] Plaintiff proved the sale and installation in Selma of a large number of heaters of the same description as that used by plaintiff's intestate, all connected with the same gas supply, and so used for many years. In this there was no error. Appellants showed that the heater used by deceased had no vent by which to take into the open air any poisonous products of gas combustion, that the use of such a vent most probably would have prevented the fatality in question, and that deceased was guilty of contributory negligence in using a heater without a vent. It is most urgently insisted that this absence of a vent was the only proximate cause of death and that defendant plumbing company and deceased alone were responsible. However, none of the many heaters used in Selma were provided with open-air vents, and, as we have already said in effect, the jury were justified upon the whole evidence in finding that a properly regulated gas pressure would have obviated the danger, and they might well have found also that appellants knew the situation and were therefore chargeable with knowledge of the necessity for a pressure regulated within certain bounds. Evidence of the facts above adverted to, and as well also the fact that the witness Parrish—who was chief executive of the plumbing company which had sold and installed many, if not all, of these heaters—had never heard any complaints, were properly admitted. As for the absence of complaints, we refer to a common trait of humankind—of which the people of Selma were part—when we say that the witness most likely would have heard complaints if there had been any cause of complaint. However, we must note the fact that this evidence was not admitted against these appellants, but against the plumbing company only, and as to the last-named company what effect it may have had, or should have had, is moot, since that company was acquitted of any wrong.

At first the trial court admitted the testimony of three several witnesses to the effect that about the hour of the accident to plaintiff's intestate, while they were using heaters of the same kind and under substantially similar conditions in their several places, except that they were located in different parts of the city of Selma, they were affected by poisonous gases. Subsequently during the progress of the trial—two days later—the court with much care and solemnity excluded this evidence and cautioned the jury on their oaths not to consider it. The complaint now is that the error committed in the first place was not cured by the later ruling. The practice here shown is regarded with much caution, each case being determined on its own facts. Most of our cases are reviewed in Watson v. Adams, 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565. Without conceding that there was error in the trial court's first ruling (Koplan v. Gaslight Co., 177 Mass. 15, 58 N. E. 183; Evans v. Keystone Gas Co., 148 N. Y. 112, 42 N. E. 513, 30 L. R. A. 651, 51 Am. St. Rep. 681; Barrickman v. Marion Oil Co., 45 W. Va. 634, 32 S. E. 327, 44 L. R. A. 92; Southern R. Co. v. Lefan, 195 Ala. 295, 70 South. 249, and cases there con-

sidered; Jones on Ev. § 141), it appears that the court sufficiently exerted itself to correct what had been done even if the first ruling were error (Watson v. Adams, supra).

[11, 12] Appellants objected to the question, "Are Reeves Electric & Plumbing Company reputable plumbers?" on the ground that it called for a conclusion, and none other, thereby waiving other grounds of objection, if any tenable grounds there were. The specific objection was not well taken. Witness should have been asked in the first place whether he knew the reputation of the plumbing company, and, upon an affirmative answer, should have been allowed to say what that reputation was, or, in the language of the question, that they were reputable plumbers, meaning, we assume, plumbers of good reputation. There is no other way to prove reputation. Lambert v. State, 205 Ala. 547, 88 South. 847.

[13] There was no error in the admission of a diagram, drawn by the witness Dozier, showing the arrangement of the supply pipes and the means of pressure control in use at the lighting company's plant. This diagram was made by the witness from knowledge obtained by him approximately 12 months before the death of intestate; but the witness had no later information, and his diagram shed some light upon the situation, as it was on the day in question, since it may be presumed that there was a degree of permanence in the arrangement shown. Foley v. Pioneer Co., 144 Ala. 178, 40 South. 273.

[14] The question shown by assignment of error 75 does not appear to have been asked by these appellants. It was, no doubt, asked by plaintiff. The objection sustained was the objection of the plumbing company. The plumbing company's defense was conducted separately, and these appellants have no right to the benefit of an objection taken in behalf of the plumbing company only. Moreover, the question sought information as to heaters in general, not heaters of the kind in use in intestate's bathroom.

[15] The court properly refused to allow the witness Phillips to state what in his opinion was the cause of the injury to intestate, there being nothing to show that the witness was a medical man nor that he was present at the accident—the witness resided at Washington, D. C.—nor that he knew anything of the physical condition of intestate before death or of her body after. And, in any case, it was not for the witness to draw a conclusion which should have been, and was, left to the jury. L. & N. R. Co. v. Landers, 135 Ala. 504, 33 South. 482; Staples v. Steed, 167 Ala. 241, 52 South. 646, Ann. Cas. 1912A, 480.

[16] The trial court committed no error in excluding the statement of the witness Phillips (assignment of error 175) for the reason, if none other, that immediately thereafter the witness gave the same information in answer to what we may presume was a question with proper hypothesis. The part of the answer excluded purported (as shown by the record) to state categorically what happened on the occasion of the accident though the witness was not present.

[17, 18] Witnesses for appellants had testified that carbon monoxide is generated or released when a gas flame comes in contact with a cold surface. Witness Reeves, called by defendant plumbing company, had had much experience with heaters of the sort used in intestate's bathroom and was familiar with their construction. This witness was allowed to testify that it was not possible for the flame from the burner on this heater to come in contact with or impinge upon or touch a cold surface, and that, with a proper adjustment of this heater, the flame from the burner does not touch any object. This was not error. If the statements of the witness be taken as nothing more than opinions, still a witness may have expert knowledge of some of the ordinary affairs of life, and may testify to opinions gained by experience and acquaintance not common to others. Staples v. Steed, supra.

[19] The witness Ellis was an expert, an educated gas engineer with much experience. His opinion as to the usage of well-conducted gas companies in the matter of providing for the control of pressure in mains under conditions similar to those in Selma was competent.

We find no error in the court's rulings on the subject of arguments to the jury made by attorneys for the plaintiff.

The court's definition of "negligence" in those parts of the oral charge to which exceptions were reserved were in substantial accord with what has been said in discussing appellants' motion to dismiss and their demurrer to the complaint. There is no need to repeat our consideration of that subject.

Assignments of error 148 to 174, both inclusive, are lumped in one argument. It will be sufficient to say of these assignments that a good number of the refused charges on which they are based proceed on the theory that if the heater in intestate's bathroom was defective and the defect caused intestate's death, plaintiff could not recover of these appellants. These charges ignore that aspect of the case, amply supported in the evidence, according to which the jury may have found that these appellants knew in fact or should have known that there were many heaters in use with the same alleged defect—the absence of an open-air vent—and that appellants were negligent in their control of the pressure of gas furnished to such heaters, intestate's included, such negligence constituting another contributing proximate cause of intestate's death. Some of the charges thus appearing to have been proper-

ly refused, we need not inquire as to all charges so lumped in argument.

[20] It follows from what has been said that there was no error in refusing the general affirmative charge requested by these appellants nor in the judgment overruling their motion for a new trial based upon those rulings, which have been treated under previous assignments of error.

Finding no error, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.

## On Rehearing.

SAYRE, J. (ANDERSON, C. J., and GARDNER and THOMAS, JJ., concurring). As to the argument that there was a variance for that the plaintiff, appellee, failed to prove the concurring negligence alleged in the complaint, appellants now urging that such variance was conclusively established by the verdict which acquitted the Reeves Electric & Plumbing Company: This, in another guise, is the question we discussed in the first place in our original opinion, in which we held that in a case against two or more defendants charging concurrent negligence the defendants might be held answerable jointly or severally. We are satisfied with that ruling. We have, however, cited several additional authorities to this point. They are conclusive.

As to assignment of error 135 touching one part of the argument made to the jury by Mr. Persons, of counsel for plaintiff, appellee: It is seriously doubted that the brief on original submission brought this question before the court in a manner requiring decision. In their brief on the original submission counsel for appellants said in respect of assignment of error 135:

"The exact quotation from the argument complained of is set out at the beginning of the discussion of the argument of counsel."

Now, in their brief on this application, counsel for appellants set out in verbis the language used by counsel for plaintiff and set out in assignment of error 135. But the language complained of in this assignment of error cannot be found at the beginning of the discussion of the argument of counsel or elsewhere in appellants' brief on the original submission of this cause. In the preparation of the original opinion in this cause we assumed, as perhaps we were justified in doing, that counsel intended to discuss those excerpts from the argument of plaintiff's counsel which were set out in the brief. The trial court had instructed the jury not to consider those parts of the argument—certainly the harm, if any, done by these arguments was not ineradicable (B. Ry. L. & P.

Co. v. Gonzalez, 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543)—and so we considered the general statement of our original opinion to be sufficient. Nor is it clear that the trial court did not exclude from the jury's consideration that part of the argument of counsel for plaintiff which was set out in assignment of error 135 and is now set out in the brief on this application. The court at first did allow this argument to go to the jury; but thereupon, as the bill of exceptions shows, a colloquy followed "between court and counsel" as follows:

"Mr. Persons: We have got a perfectly good rule over here in Georgia, gentlemen; I don't know whether it applies in Alabama, but I think it does: Where a party is able to produce it and they do not produce it, then the inference is against them.

"Mr. Turner: We object to that line of argument and move to exclude it from the jury.

"The Court: Gentlemen of the jury, you will not consider that argument."

[21] But if it be conceded that appellants have a right to the consideration of assignment 135 on this appeal and that the trial court did not exclude that part of the argument from the jury, still there was no error. Counsel for plaintiff argued to the jury in effect that defendants the Alabama Power Company and the Selma Lighting Company had it in their power to explain their method of operating the gas plant, and asked the question what conclusion the jury were entitled to draw from the failure of the named defendants to offer such evidence. Plaintiff had introduced evidence which justified the inference that the Alabama Power Company and the Selma Lighting Company, one or both, were operating the gas plant at the time of the accident in suit. Likewise there was evidence to warrant the finding that the operation of the plant had been negligent, resulting in the death of plaintiff's intestate. We may assume that defendants were contending that the evidence sustained neither conclusion. Such has been their contention in this court. If these defendants were operating the gas plant on the occasion in question, the facts as to the manner of its operation were in the peculiar keeping of persons who, it may be assumed, were friendly to the defendants. In these circumstances it cannot be said that the argument which the court permitted to go to the jury, if it did permit any part of it, was unfair or improper. Said Stone, C. J., in Carter v. Chambers, 79 Ala. 223:

"There is a rule, and a just one, that if a party has a witness possessing peculiar knowledge of the transaction, and supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is ground of suspicion against him that such better informed testimony would make against him"—citing McGar v. Adams, 65 Ala. 106; Kilgore

v. State, 74 Ala. 1; Fincher v. State, 58 Ala. 215; 1 Greenl. Ev. § 82.

Substantially the same language was used in Pollak v. Harmon, 94 Ala. 420, 10 South. 156, and a like decision recorded in Buchanan v. State, 55 Ala. 158. This is an old rule. It was said by Lord Mansfield in Blatch v. Archer, Cowp. 66:

"It is certainly a maxim that all evidence is to be weighed according to the proof which it is in the power of one side to have produced and in the power of the other to have contradicted."

Prof. Wigmore says that the propriety of the inference that the party who fails to bring before the tribunal some circumstance, document, or witness, when either he or his adversary claims that the facts would thereby be elucidated, fears to do so, and that this is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party so failing—this inference he says is most natural. 1 Wigm. Ev. § 285.

In 2 Chamb. Mod. Ev. § 1075, it is said:

"In proportion as it is to the interest of the party to submit the evidence of an available witness, the jury are entitled to infer from his neglecting to do so that his evidence, if produced, would not be favorable to the party."

Of course, there are limitations on the rule which must needs be observed. Thus, a party is not required to produce all possible witnesses, if that would elucidate nothing—in the present case defendants produced no witnesses as to the facts—nor to produce a witness likely to be prejudiced against them; and it is commonly said that no inference is allowable where the witness in question is equally available to both parties, but this qualification is itself modified by that other last mentioned, to wit, a party may not be expected to produce a witness likely to be prejudiced against him. 1 Wigm. Ev. §§ 286–288. Many of our cases on this subject are collected in Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 South. 451, and Jackson v. State, 193 Ala. 36, 69 South. 130. Statements of the rule have varied according to the exigencies of the cases. Two cases, Brock v. State, 123 Ala. 24, 26 South. 329, and Coppin v. State, 123 Ala. 64, 26 South. 333, are notable in that they disclose a difference of opinion among the members of the court as then constituted. We venture to observe of these cases that, while Judge Tyson correctly stated the rule in general, the rulings of the court in the circumstances of the two cases were correct. The charge in each case was adultery, and the question was whether, on a severance, the prosecuting attorney was properly allowed to comment on the failure of the defendant on trial to call the other party to the crime. The court answered this question in the negative. The court stated the reason of its ruling in the following language (Brock's Case):

"In the present case Coppin could not have been compelled to testify to any fact tending to criminate himself. The offense being one of which he and the defendant must both have been either guilty or innocent, his mere refusal upon the ground of self-incrimination might have been construed by the jury to the defendant's disadvantage. On the contrary, if he had not declined, the credibility of his testimony would have been open to assault upon the ground of interest."

This was repeated in Coppin's Case, and this, however satisfactory, serves to distinguish these cases from others in the same general line, and discloses the fact that these decisions are not authority against our holding in the case at bar, which is that if defendants challenged the inferences which plaintiff sought to have the jury draw from the evidence that plaintiff was able to adduce from other sources, as defendants no doubt did, it was proper matter of comment that defendants had failed to produce the testimony of its employés in charge of the plant who, it may be inferred, had better opportunity to know the facts, but whom the plaintiff in the circumstances should not have been expected to summon to the witness stand because, it is not unreasonable to infer, they were not without some natural predilection, prepossession, or prejudice for defendants and against plaintiff. Manley v. B. R. L. & P. Co., 191 Ala. 531, 68 South. 60, does not appear to hold anything to the contrary. For aught appearing in the report of that case, the motorman witness may have been no longer in the employment of the defendant, and defendant may have adduced an array of witnesses who knew as much of the facts as did the motorman. Hence, our judgment that, even if appellants were entitled to a detailed consideration of this assignment of error, no error is shown.

[22–24] As to the motion for a new trial: In so far as the motion was based upon the rulings heretofore considered, the opinion of the court needs no further statement. In respect of the insistence that the damages assessed were excessive, the argument on this point in the brief on the original submission was expressed in two lines of a 90-page brief (with citation of Montgomery, etc., v. Thombs, 204 Ala. 678, 87 South. 205), and the writer conceived the idea that it hardly needed notice. However, the court sitting for the decision of this question on rehearing, ANDERSON, C. J., McCLELLAN, SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., holds that the argument was sufficient to invoke a ruling. The action is under section 2486 of the Code of 1907, sometimes referred to

as the Homicide Act, the purpose of which is "to prevent homicides," and damages are to be assessed in such amounts as the jury may deem just and proper to effectuate the purpose of the statute. Pecuniary loss or mental suffering are not to be considered. In this case simple negligence only is alleged, and upon consideration of the circumstances shown in evidence it is conceived to be beyond dispute that no more culpable act or omission could have been found. The court is of opinion, therefore, that the amount of damages awarded evidences the fact that the jury were influenced by passion, prejudice, or other improper motive. Proceeding, in the absence of other reversible error, to assess the just and proper amount of recovery in this cause, as required by the act of September 17, 1915 (Acts 1915, p. 610), the court fixes upon the sum of $17,500 and doth order that the judgment in this cause be reversed and remanded unless plaintiff within 20 days from the date hereof remit all damages in excess of said amount, in which event the judgment will be affirmed.

[25] The court is of opinion that the statute, under which the ruling as to damages is made, deprived the appellant of neither due process nor equal protection of the law, nor does it in any wise contravene the Constitution of this state.

Application granted, judgment of affirmance set aside, and judgment reversed conditionally.

THOMAS, J. (concurring). I concur in the opinion of Mr. Justice SAYRE. He has indicated that Coosa-Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 South. 451, is without application. It may be said further of the argument of counsel there considered that Mr. Hardin was not at the time of the trial in defendant's employment, was under no presumption of bias, his immediate whereabouts known to plaintiff or his attorney as being within the jurisdiction of the court or its due process at the time indicated; and it was not shown that defendant or its counsel had such knowledge. Nor is the case of Central of Georgia v. Isbell, 198 Ala. 469, 73 South. 648, of importance on the point indicated; merely the question of variance was presented, in an action for breach of a contract to deliver cross-ties to the railway company where the complaint contained allegations of performance of the contract on plaintiff's part, and of breach of contract on defendant's part alleged conjunctively—held that the conjunctive allegation must be proved as laid. The fact that the jury acquitted the plumbing company of negligence in original installation of the heaters did not present a variance when there was sufficient evidence to support the averments of the breach of duty given expression in the complaint.