# McGar *v.* Adams.

*Action on Common Count, for Money Had and Received.*

1. *Purchase by agent at his own sale; action by principal.*—An agent, employed to sell property, can not himself become the purchaser at his own sale, either directly, or by collusion with others; and if he does so, without the knowledge or consent of his principal, the latter may, on discovering the facts, recover the compensation paid, in an action for money had and received; but this principle does not apply, where the agent acquires an interest in the property, after the termination of his agency, by subsequent contract with the purchaser at his sale.

2. *Same; presumption against agent; failure of party to testify as witness.* When an agent is found, recently after his sale, to have acquired a beneficial interest in the property under the purchaser, a strong presumption of indirection and attempted evasion arises, which he is required to remove by strong and convincing evidence; but when, in an action brought against him by his principal, the uncontradicted testimony of the plaintiff's witnesses exonerates him, no presumption against him can be indulged from his mere failure to testify as a witness for himself.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by W. W. McGar against James R. Adams, and was commenced on the 1st April, 1879. The complaint contained a single count, claiming $300 for money had and received. The cause was tried on issue joined, and a verdict was rendered for the defendant. On the trial, as the bill of exceptions states, the plaintiff introduced W. L. Chambers as a witness, "who testified, that he, or the law firm of which he was a member, had been for several years the plaintiff's agent concerning a store in the city of Montgomery; that in February, 1879, the plaintiff came to Montgomery, wishing to sell said store, and, contrary to the advice of witness, determined to sell; that witness declined to sell,

and plaintiff went to Tuskegee soon afterwards; that he (witness) employed Adams (defendant), while plaintiff was in Tuskegee, to find a purchaser for the property, and Adams reported that he could make a sale at $7,000; that plaintiff agreed to allow Adams a commission of $300 on a sale at that price; and that $6,700 was then paid to him as attorney for plaintiff, and plaintiff then made a deed to Moses Brothers, who were the purchasers. Witness further testified, that he received from Adams $100 of the commissions allowed by plaintiff, and paid over the $6,700 to him; also, that Adams, after he had made the agreement with Moses Brothers, as to the terms of the sale of the property, had nothing to do with the transaction, except to receive the commissions that had been *furnished(?)* him to find a purchaser, and the sale was completed by witness, who received the money, prepared the deed, &c., as attorney for plaintiff."

H. C. Moses was then introduced as a witness by plaintiff, "and testified as follows: that he was a member of the firm of Moses Brothers, who were real-estate agents in the city of Montgomery; that said firm, some time in the beginning of the year 1879, commenced negotiations with James R. Adams for a purchase of *it ;* that said Adams professed to represent McGar, and to have a right to negotiate a sale of the property, which he represented to belong to McGar; that his firm agreed with Adams to purchase said house, at the sum of $7,000; that he gave to W. L. Chambers, as the attorney for McGar, a check for $6,800, drawn by his firm on Farley, Spear & Co.; that his firm, at the time he made the purchase, did not have the money convenient with which to make the payment, and he went to said Adams, who was a banker, to borrow the amount of money which his firm lacked to complete the payment; that on the next day, in consideration of this money, his firm sold to Adams a half interest in the property, at the purchase price, and his firm and Adams then divided the $200 of the commission allowed by McGar, which remained after the payment of the $100 to Chambers, equally between them, and became the joint owners of the property purchased by them, share and share alike. This witness further testified, that his firm and Adams, about forty days thereafter, commenced to bid against each other for the property, and his firm became the purchaser of the interest of Adams at an advance to him of $565; that property had rapidly advanced after the sale, and the sum so paid to Adams was no more than, if as much as the advance on the property; that, at the time his firm agreed on the purchase, there was no agreement between them that Adams should have any interest in the purchase; that Adams lent

the money to his firm, on its credit, but, on the next day, in consideration of the money which Adams had loaned them, and which he knew was to be applied to the purchase, his firm sold to Adams a half interest in the property, at the purchase price, divided the commissions, and became the joint owners of the property, as above stated; that Adams, since said firm had purchased his interest in the property, had offered them an advance on the property, which they declined to accept, because they thought the building was at the time worth more than the price offered. Witness testified, also, that McGar offered his firm, before the payment of said $6,800, two or three hundred dollars, to be released from conveying to them at the price of $7,000; also, that Moses Brothers and said Chambers, before the negotiation of said firm with Adams, had been negotiating concerning the same property, and Chambers had offered to employ them to find a purchaser for it. A. H. Moses, also a witness for plaintiff, testified to substantially the same facts as H. C. Moses."

"This was all the testimony for the plaintiff, and the defendant, who was present in court, did not introduce any testimony at all; and thereupon, on this evidence, the plaintiff requested the court, in writing, to charge the jury, that they must find for the plaintiff, if they believed all the evidence; which charge the court refused to give, and the plaintiff excepted to its refusal. The plaintiff then requested the following charges, which were in writing: 'The purchase by one who sustains the relation of agent to a principal, in relation to the property which was the subject of sale, is to be jealously scanned; and the fact of agency being established, it is incumbent on the agent to show that he acted in the best faith, and with an eye single to the interest of his principal; and if the jury believe that Adams acquired an interest in the purchase, without the consent of his principal, this is such an act as the law calls a fraud, and McGar can recover the commissions paid by him in ignorance of such interest.' 'Whether or not Adams, at the time of the sale to Moses, had any understanding with Moses as to the sale back to Adams, need not necessarily be proved by direct testimony on that point, but may be shown by circumstantial evidence; and if the jury believe that Adams occupied a fiduciary or trust relation to McGar at the time of the sale, and that Moses borrowed money from Adams to enable him to pay the purchase-money, and that Adams took a half interest in the property from Moses shortly after this,—then, these are facts which the jury may consider, in determining whether there was, at or before the sale, any understanding

between Moses and Adams that Adams was to have an interest in the property; and if these facts, when taken in connection with the whole evidence, in the opinion of the jury cast suspicion on the transaction, then the jury may consider the further fact, if they find it to exist, that the defendant, although the fact lay peculiarly within his own knowledge, did not introduce himself as a witness, or testify as to the existence or non-existence of any understanding with Moses, at the time of the sale, that the defendant was to acquire an interest in the property.'" The court refused each of these charges, and the plaintiff duly excepted to the refusal of each; and he now assigns the refusal of these charges as error.

EDWIN F. JONES, for the appellant, cited Wharton on Agency, §§ 232–36, and cases cited; Ross' Leading Cases, 235; *Saltmarsh v. Beene*, 4 Porter, 283; *Walker v. Palmer*, 24 Ala. 358; *Thorpe v. McCollum*, 1 Gilm. 614; Story on Agency, § 210; *Baine v. Brown*, 56 N. Y. 285; 2 Sugden on Vendors, 887; *East v. Pace*, 57 Ala. 521; Waite's Actions and Defenses, tit. *Agent*.

GUNTER & BLAKEY, contra, cited *Fritz v. Finnerty*, 10 Central Law Journal, 487; *Fincher v. The State*, 58 Ala. 215; *Thrash v. Barnett*, 57 Ala. 156.

BRICKELL, C. J.—An agent who, for a reward, is employed in the transaction of business, will justly forfeit all right to compensation, if he is guilty of bad faith to the principal; and it would be grossly disloyal, if he is an agent to sell, for him to use the agency, and the trust and confidence reposed, to become, without the knowledge and consent of the principal, a purchaser, by a combination with others bidding for the property. If, in ignorance of the facts, the principal should make payment of the compensation, when informed of them, he may recover it back, as money paid under mistake of fact.—Whart. Agency, § 336.

The difficulty, in the way of appellant, lies not in the legal proposition, or the conclusions from it, which are intended to be embodied in the first charge requested, but that the charge is so framed, that without explanation it would have misled the jury. As requested, if it had been given, the jury could well have supposed, that the agent, Adams, could not, at any time, though the agency had ceased, and all its business fairly transacted and concluded, without suspicion have acquired any interest in the property sold; and that the acquisition of such interest, though it was not contem-

plated until the agency had terminated, would authorize a recovery of the commissions paid.   For that proposition, the counsel of the appellant would not contend.

The second charge requested enumerates circumstances, found in the evidence, which the jury could very properly have considered, in determining whether the fact was, that Adams was interested with Moses in the purchase of the store-house.   It may be, these circumstances would not, in the estimation of the jury, have outweighed the positive evidence of the appellant's own witnesses, disproving the fact that, at the time of the purchase, Adams had an interest in it, and proving that his interest was subsequently acquired, after the agency had terminated, and the purchase was fully consummated. Strong presumptions of indirection, and effort to evade the salutary principle forbidding an agent to stand in the conflicting relation of seller and purchaser, must arise when, so recently after the sale, he is found to have acquired, from the vendee, a beneficial interest in the property sold. The presumption, it is a duty the agent owes to himself, and the law exacts, to remove by clear and convincing evidence of the absence of all concert, or collusion, and of the fairness of the transaction.—*James v. James*, 55 Ala. 525. But, when these are removed by positive evidence, proceeding from the witnesses introduced against him, the demands of the law are satisfied. When there is conflicting evidence, or there is an absence of other than mere circumstantial evidence, to establish a material fact lying within the knowledge of a party, it may be a presumption can be indulged against him, if he fails to testify. We do not affirm that such presumption can or ought to be indulged—this case does not require it.   But we do affirm that a presumption can not, and ought not, to be indulged against a party, who does not introduce and examine himself as a witness, merely to support the uncontradicted evidence, favorable to him, which his adversary introduces. Without subjecting himself to the imputation of withholding evidence, he may properly rely on that his adversary introduces, when it is without contradiction. The vice of this charge is, that it affirms a contrary view.

Let the judgment be affirmed.