# Manley *v.* Birmingham Ry. L. & P. Co.

## *Crossing Accident.*

(Decided January 14, 1915. 68 South. 60.)

1. *Street Railways; Death; Negligence; Last Clear Chance.*—Where one in control of a street car or engine discovers a person in peril on the track, it becomes his duty to resort to all preventive measures known to persons of skill in such work to avert injury, and this, under some circumstances, includes the duty of a warning of the approach of the car, dependent upon particular conditions and measured by what a prudent and skillful person familiar with such employment would do under similar circumstances; his failure to do so being justified if the giving of the warning would interfere with his efforts to stop the car.

2. *Same; Instructions.*—Where the action was for the death of the person killed at a crossing on defendant's line, charges asserting that if the car was carefully operated, and deceased suddenly stepped upon the track so close to the car that it could not be stopped by any means at hand, that if the proximate cause of intestate's death was his going upon the track, so close to the car that struck him that his injury could not be prevented; that if the motorman after discovering his peril used all means to prevent the car from striking intestate, and did not wantonly run him down, plaintiff could not recover, were not faulty as pretermitting defendant's duty to warn of the approach of the car, since such warning was proven without dispute.

3. *Same.*—A charge asserting that if the motorman was in his proper place the jury might find that he saw the peril of decedent when his car was further away from him than when the motorman blew his whistle, if the track was straight and nothing obstructed his view, and that decedent got into a perilous position at a point on the track nearer the car than when the motorman sounded his whistle, was not only argumentative but also invasive of the province of the jury.

4. *Same; Evidence.*—Where the action was for the death of intestate at a crossing on defendant's track, and the negligence counted on was under the last clear chance rule, and a wanton striking of deceased, evidence that the brakes on the car were defective was admissible on the issue of the motorman's wanton misconduct, if he knew of such defective condition of the brakes, and it was error to exclude evidence as to whether a witness knew whether the brakes were defective when he ran the car during the first half of the year in which deceased was killed; and such evidence being corroborative of plaintiff's witness, the exclusion was prejudicial to plaintiff.

5. *Same.*—The admission of evidence that other cars usually went at the same rate of speed, as the car which killed decedent was going,

was erroneous; that fact not necessarily making it right for the car to be going at the speed at which it was, and the other car might have been equipped with good brakes.

6. *Trial; Remarks of Counsel; Exclusion.*—Remarks of counsel tending to make capital of the fact that defendant did not use as a witness the motorman running the car at the time of the accident, were properly excluded.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by Louise Manley, as administratrix, against the Birmingham Railway, Light & Power Company for the death of her intestate, John T. Manley. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The first count declares on subsequent negligence in that the motorman failed to use all means at his command to prevent the cars from running against plaintiff's intestate after becoming aware of his peril. The second count is for wanton misconduct on the part of the motorman in charge of the operation of the car in that, while acting within the line and scope of his employment, he wantonly ran said car, over, upon, or against plaintiff's said intestate, and killed him. The following charges were given for defendant: (1) If you believe from the evidence that after the said car left Fairview up until the accident it was being carefully and properly operated, and if you are further reasonably satisfied from the evidence that intestate was walking west on the south track in a place of safety from the car which struck him, and that he suddenly stepped from the south track to the north track so close to the approaching car that it could not be stopped by the use of all the means at hand before striking him, and that its speed could not be sufficiently checked by the use of the means at hand to enable intestate to leave the track in safety, then you must find for defendant.

(3) If you are reasonably satisfied from the evidence in this case after a consideration of all the evidence that the sole proximate cause of intestate's death was his going upon the track in such close and dangerous proximity to the car which struck him that his injury and death could not be prevented by the use of all the means at hand for stopping and controlling said car, then you must find for defendant.

(4) If you believe from the evidence that the motorman in charge of the car, as he approached intestate, was in the exercise of due care, and that as soon as he discovered the peril of Mr. Manley being struck by said car he used all the means at his command to prevent his car from striking Mr. Manley, then you must find for defendant.

(5) If you are reasonably satisfied from the evidence in this case that the motorman did not wantonly run his said car upon, over, or against Mr. Manley, and that as soon as the motorman became aware of Mr. Manley's peril he used all the means at his command to avoid injuring him, then you must find a verdict for defendant.

(6) Mere error of judgment on the part of a motorman operating a street car made in good faith as to whether a pedestrian walking on or dangerously near the railroad track is in danger of being struck by the car does not amount to such negligence or misconduct as alleged in plaintiff's complaint.

Charge 1 refused to defendant is as follows: If you believe from the evidence in this case that the motorman in charge of the local train which ran over Mr. Manley was standing up in his proper position in the front end of the car with his face looking ahead from the time his train left Fairview until the accident occurred, you are allowed to find from this circumstance that, as a matter of fact, the said motorman saw the

perilous position of Mr. Manley when his train was further away from Manley than it was when said motorman started to blow his whistle, provided you find from the evidence that the track from Fairview to the point of the accident was straight, and that there was nothing between these points to obstruct his view, and provided you further find from the evidence that the said Manley got into the perilous position at a point on said track nearer to Fairview than he was at the time the motorman sounded his whistle.

PERDUE & DRAKE, for appellant.

TILLMAN, BRADLEY & MORROW, and CHARLES A. RICE, for appellee.

ANDERSON, C. J.—(1) It is a well-established rule of law, uniformly adhered to by this court, that when an agent or servant in control of an engine or car discovers a person in peril upon the track of a railroad, he must resort to all preventive means known to skilled persons engaged in the management and control of trains, engines, cars, etc., to avert injury. After discovering the peril, he must not only resort to all means at hand to stop or check the train or car, but must resort to all other means known to prudent and skilled trainmen to avert the injury, and which would, under some circumstances, include the duty of giving a warning as to the approach of the train. It may sometimes happen that a person is on a track and is not discovered in time to stop the train before reaching him, or to so check the speed thereof as to prevent injuring him; yet, if he becomes conscious of the approach of the train and of his danger, he could extricate himself by getting off the track before being struck. In other

[Manley v. Birmingham Ry. L. & P. Co.]

words, the person may come so suddenly upon the track that he is not seen until too late to stop the train before reaching him, or to slacken the speed so as to avoid injuring him, yet, if warned of the approach of the train, he might have time to get out of the way of danger; and the duty enjoined upon the trainmen is not only to use all means at hand to stop the train or car, but to resort to all preventive means known to prudent and skillful trainmen to avoid injury, and which would, under some circumstances, require a warning. As to when the warning should or should not be given, or whether the engineer should warn and attempt to stop the train also, or should do all or some of the things, depends largely upon the circumstances of the particular case, and is usually a question for the jury; the test being: Did he resort to all preventive means best calculated to avert injury; that is, do the things which prudent and skillful engineers would have done under similar circumstances? If he had time to stop the train, but giving the warning would interfere with his efforts to stop, the failure to give the warning might be justified, or, if he did not have time to stop the train, the warning should be given, or, if the giving of the warning did not detract from his efforts to stop the train, he should do both. Did he resort to those means known to prudent and skillful trainmen as were best calculated to avert the injury under the facts and circumstances in the particular case?—L. & N. R. R. Co. v. Young, 153 Ala. 232, 45 South. 238, 16 L. R. A. (N. S.) 301; A. G. S. R. R. Co. v. McWhorter, 156 Ala. 269, 47 South. 84; L. & N. R. R. Co. v. Holland, 173 Ala. 675, 55 South. 1001.

(2) Charge 1 given for the defendant hypothesized to the exclusion of wanton negligence up to the time of the accident, and instructed a finding for the defend-

ant if the intestate came so suddenly upon the track that the train could not be stopped, or the speed checked by the use of all the means at hand in time to avoid the injury. If this charge is subject to any criticism, it is due to the fact that it justifies a verdict for the defendant solely upon an inability to check or stop the car before striking the intestate, and pretermits the duty to warn the intestate of the approach of the car, and did not, therefore, require the motorman to resort to all preventive means to avert the injury, thus in effect, assuming that the warning was given if it could have been a factor, and this assumption would, no doubt, render the charge objectionable, and the giving of same reversible error, but for the reason that the fact assumed—that is, the warning—was proven without dispute, and which justifies the giving of said charge. The plaintiff's evidence shows that the danger signal was given. Indeed, the blowing of the danger signal was what the plaintiff largely relies upon to show that the motorman had notice of the intestate's presence upon the north track. This charge is unlike charges 7 and 8 considered in the *Holland Case, supra.* Moreover, the refusal of said charges in the *Holland Case* was simply justified, and the opinion does not indicate that the giving of same would have been reversible error.

Defendant's given charges 3, 4, and 5 are criticized in the argument as possessing the same vice contended against charge 1. They are not subject to the appellant's criticism, for the reasons advanced in the above discussion of charge 1.

While charge 6, given for the defendant, may not be unsound as to the principle it asserts, yet it possibly has misleading tendencies which would justify its refusal; but, as this case must be reversed for other

reasons, we need not determine whether or not the giving of said charge was reversible error.

(3, 4) There was no error in refusing plaintiff's requested charge 1. It was argumentative, and invaded the province of the jury.

(5, 6) The fact that the brakes on the car were defective at the time of the accident was a factor for the jury in determining whether or not the motorman was guilty of wanton misconduct in running a car at the rate of speed testified to by some of the witnesses at a place where there was evidence showing that the track was used with frequency by quite a number of people, provided, of course, the said motorman knew at the time of the defective condition of the brake. Certainly proof of the condition of the brake at the time of the accident was the proper inquiry; but the winess Thomas testified that the brake was not only defective at the time, but had always been so since they got the car, and the fact that it was defective during the first half of the year in which the intestate was killed not only corroborated the said Thomas, but tended to show that the defect had existed so long a time as to bring notice to this motorman, who had operated the car for months, of the existence of the defect at the time of the accident. The trial court therefore erred in not letting the witness Rowell state whether or not the brake was defective when he ran the car during the first half of the year 1912. Nor can we say that the failure of the plaintiff to get the benefit of this evidence was not injurious, as suggested by appellee's counsel in brief, upon the idea that it was merely cumulative to the evidence of Thomas, as Thomas was flatly contradicted by the defendant's witness Dial, who testified that there was nothing wrong with the brakes during the year 1912. The witness Thomas had also been contradicted by

proof of his previous testimony on a former trial, and it may have been of great importance to the plaintiff to have had this witness corroborated as to that feature of the evidence.

(7) The trial court also erred in permitting the defendant to prove that other cars usually went at the same rate of speed as that one was going. This fact did not make it necessarily right for this car to go as it did; as the others may have been going too fast when passing this point. Moreover, they may have been equipped with good brakes and the plaintiff's evidence showed that the brake upon the car in question was defective, and a car with defective brakes might not be justified in going as fast as one with good ones.

(8) The effect and tendency of the remarks of plaintiff's counsel, which were excluded upon objection of defendant, was to make capital of the defendant's failure to use the motorman, Hardy, as a witness, and the same were properly excluded.—*Forman v. State,* 190 Ala. 22, 67 South. 583; *Hutcherson v. State,* 165 Ala. 16, 50 South. 1027, 138 Am. St. Rep. 17.

The other assignments of error not discussed in this opinion have been considered, and the trial court committed no reversible error in these rulings.

For the error pointed out, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

McClellan, Sayre, and de Graffenried, JJ,. concur.