112 So.2d 203

**ATLANTIC COAST LINE RAILROAD COMPANY**

v.

**Hutson LARISEY.**

**6 Div. 224.**

Supreme Court of Alabama.

Jan. 15, 1959.

Rehearing Denied May 21, 1959.

204

Schuyler A. Baker and Clifford Emond, Birmingham, for appellee.

Higgins, Windham, Perdue & Johnson, Bainbridge & Mims, Birmingham, and Brobston, Jones, & Brobston, Bessemer, amici curiæ.

MERRILL, Justice.

This appeal results from a verdict against appellant for $75,000, which was subsequently reduced to $60,000, pursuant to an order of the trial court and a remittitur filed by appellee.

The suit grew out of a collision of appellant's locomotive with the rear end of

Peyton D. Bibb, Graham, Bibb, Wingo & Foster, Birmingham, for appellant.

appellee's automobile which had crossed the tracks of appellant at a crossing (not public), but the rear bumper had not cleared the tracks and the automobile was struck but not overturned. Appellee received serious injuries. The cause was submitted to the jury on a count charging subsequent negligence and a count charging wantonness.

■ Since the judgment must be reversed, we discuss only three assignments of error. No. 76 charges that the trial court erred in overruling the demurrer to Count Two, as amended, the wanton count. During the process of pleading, appellee amended Count Two "By striking from Count 2 of the Complaint as last amended the first paragraph thereof and substituting in lieu thereof the following: * * * and as a proximate result thereof plaintiff was injured and damaged as follows:". Appellant contends that the failure to continue to a period rather than stopping the amendment at the colon eliminated from the complaint all averments of injuries or damages. The record shows that the original complaint contains an indention following the colon, and while it might not be grammatically correct to say that a new paragraph was begun, we think the criticism to be hypercritical and, therefore, hold that the count was sufficient.

Assignments of error 71 and 72 charge that the court erred in overruling objections to closing argument by counsel for appellee. The record shows the following to have occurred:

"Mr. Emond: And let me tell you something, gentlemen of the jury, while you are seeking the truth, the voice of the engineer is silent and mute. The engineer that they employed and under whose direction that engine was, gentlemen of the jury, the man with the hand on the throttle is strangely absent.

"Mr. Bibb: We object, if the Court please to the propriety of that argument, and counsel making an inference in the argument for the failure to put the testimony of the engineer on the stand; the record shows in the proceedings of this court, and at the start of this trial he took the deposition of the engineer, and he had been in court, and he was in court, and they had subpoenaed him and he was here.

"The Court: I will overrule.

"Mr. Bibb: We except.

"(Whereupon, Mr. Emond resumed argument on behalf of the plaintiff, during which the following occurred:)

"Mr. Emond: But leave him out of the picture. When you go to the jury room, gentlemen of the jury, to decide this case you take the ghost of that engineer, Naish, with you and ask him 'What did you do to stop that train? Why didn't you want to tell it? Why are you silent?' and you have got the answer to this law suit.

"And gentlemen of the jury I say if I was here and presented this case to you and wanted you to have the truth about it, and he was my witness, you would have seen him on the stand.

"Mr. Bibb: We object to the highly improper statement of counsel.

"Mr. Acker: Not only highly improper but improbable.

"Mr. Bibb: Self-serving declaration.

"The Court: The limits of argument on each side the law says are very broad. I will overrule.

"Mr. Bibb: We except."

The question presented is the right vel non of counsel to comment on the failure of appellant to call the engineer, Naish, as a witness.

Appellee called Peter Henry, the fireman on the diesel locomotive, as his witness.

Henry testified that the train was traveling toward Birmingham at about 30 miles per hour. The train was in a sharp curve to the right as it approached the crossing. Henry was sitting at the left front of the locomotive, brakeman Purple was in the middle and engineer Naish on the right side. When they first saw appellee's automobile, it appeared to Henry that it was off in the woods and not near the tracks. The engineer asked Henry if the car was in the clear and Henry replied that he did not know. The engineer raised up from his seat to get a better view. As they came on around the curve and drew closer to the crossing, Henry "hollered, 'No, it is not in the clear.'" Thereupon, the engineer immediately put the brakes on in full emergency. Henry said he had been firing for 31 or 32 years and when asked if he knew of a quicker way to stop or slow down an engine than to put the brakes in full emergency; he answered, "that is all of it." He testified that as the train came nearer the crossing, he could see a white man lying in the front seat and a colored man lying in the back seat, both of whom apparently were asleep because they were not disturbed by the short blasts of the whistle. After striking the car, the locomotive stopped about ten car lengths past the crossing.

Henry also identified some pictures which were taken later from the cab of the locomotive looking toward the crossing from the direction in which the train was traveling on the morning of the accident. Exhibit A was a picture taken from the fireman's seat at the point when it was just possible to see an object placed where plaintiff's car was on the date of the accident. Exhibit B showed the view from the engineer's seat. He also identified pictures taken from his seat and the engineer's seat when they could first see that plaintiff's car was close enough to the track to be in danger and when the brakes were applied in full emergency. Henry testified that the locomotive had been placed for the pictures by the engineer, the brakeman and himself. He also testified on direct examination that the engineer, Naish, was present in court.

In City of Birmingham v. Levens, 241 Ala. 47, 200 So. 888, 891, we said:

"The general rule is when a witness is accessible to both parties, or his evidence would be cumulative, neither party can comment on his absence. Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 So. 451; Louisville & Nashville R. R. Co. v. Sullivan Timber Co., 126 Ala. 95, 27 So. 760."

This rule was cited in Cooper v. Grubbs, 262 Ala. 519, 80 So.2d 284, where many other Alabama cases are discussed, and where it was held that comments by defendant's counsel concerning the failure of the husband and wife to call a doctor as a witness was improper and was sufficient grounds for granting a new trial. The rule is also subject to some exceptions or refinements. As stated in Carter v. Chambers, 79 Ala. 223, and followed many times:

"* * * There is a rule, and a just one, that if a party has a witness possessing peculiar knowledge of the transaction, and supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is ground of suspicion against him that such better informed testimony would make against him. McGar v. Adams, 65 Ala. 106; Kilgore v. State, 74 Ala. 1; Fincher v. State, 58 Ala. 215; 1 Greenl.Ev. § 82. This duty, however, rests with special force on the party who has the burden of proof; most generally on the plaintiff. The defendant may, and frequently does, rest his defense on what he considers the weakness of his adversary's testimony, as he interprets it, or on the exculpatory features it presents. He is under no obligation to aid the plaintiff in making out his case. McGar v. Adams, supra. * * *"

In Louisville & Nashville R. Co. v. Sullivan Timber Co., 126 Ala. 95, 27 So. 760, 762, this court said:

> " * * * The failure of the defendant to produce as a witness the fireman of the engine used by the defendant, and alleged to have occasioned the fire, the engineer in charge of the engine having been examined by defendant as a witness, was not, under all the authorities, a proper subject of comment. Brock v. State, 123 Ala. 24, 26 So. 329; Coppin v. State, 123 Ala. 58, 26 So. 333, and authorities cited."

In Manley v. Birmingham Ry., Light & Power Co., 191 Ala. 531, 68 So. 60, 63, Chief Justice Anderson wrote:

> "The effect and tendency of the remarks of plaintiff's counsel, which were excluded upon objection of defendant, was to make capital of the defendant's failure to use the motorman, Hardy, as a witness, and the same were properly excluded. Forman v. State, 190 Ala. 22, 67 So. 583; Hutcherson v. State, 165 Ala. 16, 50 So. 1027, 138 Am.St.Rep. 17."

Again, in Bradford v. Birmingham Electric Co., 227 Ala. 285, 149 So. 729, 732, the court said:

> " * * * Nor must we be understood as intimating that, if proper exception had been reserved, there was, in fact, error in refusing to permit the plaintiff to comment upon the fact that the conductor, though in court, was not examined by the plaintiff. The conductor was not a party to the suit, and he was equally available to the plaintiff as a witness as he was to defendant. Manley v. Birmingham Ry., Light & Power Co., 191 Ala. 531, 538, 68 So. 60; Louisville & N. R. R. Co. v. Sullivan Timber Co., 126 Ala 95, 27 So. 760."

Applying these pronouncements to the facts in the instant case, we are constrained to hold that the trial court erred in overruling the objections to the closing argument.

The record shows that the engineer had formerly been examined by deposition, that appellee had access to it, that the engineer was present in court and that he had been subpoenaed by the appellee. He had formerly been a party defendant, but had been stricken as such prior to the trial. Certainly, he was accessible to both parties. The fireman, Henry, testified to all that occurred from the first sighting of the automobile at the crossing, and to every act that the engineer performed. His testimony was sufficient to raise an inference that all that could be done after the discovery of the peril was done. His testimony also showed that the engineer agreed with him as to the distances when they first saw and later discovered that the car was too near the crossing, because the locomotive was placed at those distances by agreement of the three men in the cab. It is apparent that the engineer's testimony would have been cumulative, and it was the defendant's right to submit that aspect of the case to the jury on the testimony of the fireman, who was appellee's witness and was vouched for by appellee, and not call the engineer as a witness when his evidence would only have been cumulative. There was no indication that the engineer possessed some peculiar knowledge that would be so detrimental to defendant that he was not called as a witness by the defendant.

Moreover, there was no conflict in the evidence as to the operation of the locomotive or the actions of the engineer. As noted in Hinton & Sons v. Strahan, 266 Ala. 307, 96 So.2d 426, the rule in Alabama is different when commenting on the failure of a party to testify than on the failure to call a witness. Much more latitude is allowed when a party fails to testify. Even though it is generally held that "the failure of a party to a suit, when present at the trial, to testify as to a fact in issue, furnished legitimate ground for comment in argument to the jury by the opposite party", it was pointed out that in Mc-

Gar v. Adams, 65 Ala. 106, "* * * this court held that a party's failure to testify merely to support uncontradicted evidence, favorable to him, which his adversary introduces, did not give rise to the presumption of the imputation of withholding evidence. In other words, it was unnecessary for the party to testify." In that case the court said:

> "* * * But we do affirm that a presumption can not, and ought not, to be indulged against a party, who does not introduce and examine himself as a witness, merely to support the uncontradicted evidence, favorable to him, which his adversary introduces. Without subjecting himself to the imputation of withholding evidence, he may properly rely on that his adversary introduces, when it is without contradiction."

We think the same rule is applicable when the testimony of a *witness*, not a party, would only support "the uncontradicted evidence, favorable to him, which his adversary introduces."

In support of the ruling of the trial court, appellee cites the following cases: Carter v. Chambers, 79 Ala. 223; Central of Georgia R. Co. v. Ellison, 199 Ala. 571, 75 So. 159; Alabama Power Co. v. Talmadge, 207 Ala. 86, 93 So. 548; Waller v. State, 242 Ala. 1, 4 So.2d 911; United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685. We have carefully considered these cases and are persuaded that there is no conflict in what they hold and in what we have here held.

The judgment of the lower court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.

### On Rehearing

Appellee argues that our holding here overrules the cases of Alabama Power Co. v. Talmadge, 207 Ala. 86, 93 So. 548, and United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685.

The statement of the holding in the Talmadge case which it is charged that we have overruled is:

> "* * * if defendants challenged the inferences which plaintiff sought to have the jury draw from the evidence that plaintiff was able to adduce from other sources, as defendants no doubt did, it was proper matter of comment that defendants had failed to produce the testimony of its employés in charge of the plant who, it may be inferred, had better opportunity to know the facts, but whom the plaintiff in the circumstances should not have been expected to summon to the witness stand because, it is not unreasonable to infer, they were not without some natural predilection, prepossession, or prejudice for defendants and against plaintiff." [207 Ala. 86, 93 So. 558.]

(In the second paragraph preceding the quoted portion, supra, a statement appears— "in the present case defendants produced no witnesses as to the facts." This statement should be limited to "facts" relating to the operation of appellants' gas plant. Actually, the appellants used several witnesses, but none testified as to the operation of the plant, and the case is not one where the defendant offers no evidence.)

In the Talmadge case, the plaintiff was able to make out his case without calling any of defendants' plant employees and, as the court said, plaintiff should not have been expected to summon to the witness stand those employees who might possibly have some natural predilection for defendant. Here, the only three eyewitnesses to the accident were the engineer, the fireman and the brakeman, all employees of the defendant. The testimony of the engineer and the fireman had been taken by deposition and these depositions were available to plaintiff, who decided to use the fireman *as his own witness* to help make out his case.

This is the point of departure from the Talmadge case. There, no employee of defendants, who "had better opportunity to know the facts" was called by either side. Here, plaintiff chose to call the fireman as he had a perfect right to do. But the engineer was just as available to plaintiff. Here were three witnesses, the engineer, the fireman and the brakeman, all employees of defendant, and they did possess peculiar knowledge of the transaction. Had none been called by either party, the failure to produce would have been subject to comment in argument (the Talmadge case); but the choice to call one of them was made by plaintiff, not their employer, and one, the fireman, having been offered and vouched for by plaintiff, and his testimony being generally favorable to the employer, there was no ground for suspicion that the employer failed to call the others because their testimony would be against it. This is consistent with the holdings in Louisville & Nashville Railroad Co. v. Sullivan Timber Co., 126 Ala. 95, 27 So. 760; Manley v. Birmingham Ry., Light & Power Co., 191 Ala. 531, 68 So. 60, and Bradford v. Birmingham Electric Co., 227 Ala. 285, 149 So. 729, cited in the main opinion.

The case of Manley v. Birmingham Ry., Light & Power Co., 191 Ala. 531, 68 So. 60, is very similar to the instant case. There, as here, the case was submitted on two counts, the first charging subsequent negligence and the second charging wantonness. In that case, the jury found for the defendant.

On appeal, several assignments of error charged that the court "erred in refusing to allow appellant's counsel in his closing argument to the jury in her behalf to comment upon the failure of appellee to use motorman Hardy as a witness." Even though this court reversed and remanded the cause, it was held that the comment was properly excluded.

In that case, the conductor of the street car was called as a witness for the plaintiff. He testified as to the blowing of the whistle and the putting the brakes in emergency and to the fact that the motorman helped him measure the distances after the street car had struck the deceased. In arguing to the court, appellant's attorney stated "Mr. Hardy was there, the testimony is that Mr. Hardy was here at court and Mr. Hardy could testify as no other man could testify in reference to this matter." This closely parallels appellee's argument in the instant case, except that the argument here was more vigorous. Immediately following the quoted portion of the opinion in the Talmadge case, which appears in the second paragraph of our comments on this rehearing, the following is found:

> "* * * Manley v. Birmingham, Ry., Light & Power Co., 191 Ala. 531, 68 So. 60, does not appear to hold anything to the contrary. For aught appearing in the report of that case, the motorman witness may have been no longer in the employment of the defendant, and defendant may have adduced an array of witnesses who knew as much of the facts as did the motorman. * * *"

As a matter of fact, the defendant there did not adduce "an array of witnesses who knew as much of the facts as did the motorman." No one in that case testified whether the motorman was or was not in the employment of the defendant at the time of the trial, and no one so testified as to the engineer, Naish, in the instant case. Be that as it may, we think a more valid distinction between the Talmadge case and the Manley case is that in the former, comment was allowed because no employees who had peculiar knowledge testified for either side, while in the latter, the conductor testified at the instance of the plaintiff.

The original record in the Manley case shows that the conductor, testifying for the plaintiff, was the only witness to state the details of the operation of the street car. In the instant case, the fireman was the only witness to testify as to the operation of the train. We think therefore, that the Manley case is in point and is apt authority

for our holding in the instant case. Some of the exact language in the Manley case was cited with approval in Alabama Power Co. v. Elmore, 222 Ala. 6, 130 So. 413, and the Manley case has been cited with approval and followed several times on this point.

Our statement in the original opinion—"Certainly, he (the engineer) was accessible to both parties"—did not mean equally accessible in reference to witnesses generally. We sought only to show that the engineer and his testimony was accessible to both parties, although not equally accessible, assuming that he was still an employee of the defendant; but, as we have shown, the engineer and his testimony, and the fireman and his testimony were equally accessible to plaintiff and plaintiff chose to call the fireman as his own witness. The holding in the Talmadge case on the point in question is that counsel for plaintiff was entitled to comment on the failure of the defendants to call witnesses who had peculiar knowledge of the operation of the gas plant when no such witnesses had testified as to those facts, and that the employees of defendant who had this peculiar knowledge were not equally accessible to the plaintiff.

The case of United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685, 689, is also distinguishable. There, four men witnessed the shooting of the deceased. But they were not all in the same class. Two were employees of the defendant and, under the cited Talmadge case, were more interested than the other two, who were regular deputy sheriffs and presumably disinterested. All four were hidden in a garage and when one of the defendant's employees stepped out and accosted the deceased, and deceased "made a demonstration toward his shirt bosom" the employee "shot him down." These four men possessed peculiar knowledge of the transaction. But no disinterested (non-employee) witness was put on the witness stand by either side. Had the defendant called only one of its employees and one of the regular deputies, our holding would have been different. Also, had plaintiff called one regular deputy, we would not have approved comment in argument on the failure of the defendant to call the other. As was said in Cabaniss v. City of Huntsville, 217 Ala. 678, 117 So. 316, 320, "The absence of disinterested evidence upon either side of any issue of fact is a proper matter for comment by opposing counsel."; but again quoting from the Talmadge case "a party is not required to produce all possible witnesses."

We think the above distinguishes the holdings in the Talmadge and Butler cases from that in the instant case.

Application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.