495 So.2d 626 (1986)
William Elbert HALLMAN
v.
Emmitt SUMMERVILLE, Administrator of the Estate of Burnard Summerville, Deceased.
84-1243.
Supreme Court of Alabama.
September 12, 1986.
McCoy Davidson of Roberts, Davidson & Wiggins, Tuscaloosa, for appellant.
Jack Drake of Drake, Knowles & Pierce, Tuscaloosa, for appellee.
ALMON, Justice.
This wrongful death action stems from a collision between a motorcycle driven by plaintiff's decedent and a boat and trailer being towed by defendant's truck. The trial court entered judgment on the jury verdict awarding plaintiff $125,000. Defendant argues that the trial court should have granted a directed verdict on the ground of contributory negligence or a new trial because the verdict was contrary to the great weight and preponderance of the evidence. Defendant also argues that the *627 trial court committed reversible error in not sustaining an objection and issuing curative instructions during plaintiff's closing argument, and that the verdict was excessive and a result of bias and prejudice on the part of the jury.
On October 7, 1983, Burnard Summerville was driving his motorcycle south on Highway 39 in Greene County. As he crossed the bridge over the Tombigbee River about 6:30 or 7:00 p.m., he ran into the rear of the boat on the trailer being towed by defendant, William Elbert Hallman. Burnard died immediately.
Hallman testified that this was the first time he had driven over the bridge since it had been reopened, and that he was driving about ten miles per hour and looking at the bridge. The evidence was in dispute as to whether the trailer had a light on it and whether it was dark enough for lights to be required for visibility. There was uncontradicted evidence that a test on a blood sample from the deceased showed the alcohol content of his blood to be 0.28%, but a witness testified that he saw the deceased shortly before the accident and that he did not appear to be intoxicated.
Hallman argues that the trial court should have granted his motion for directed verdict because the alcohol content of the deceased's blood established contributory negligence as a matter of law. Code 1975, § 32-5A-194, establishes a presumption that a person driving a vehicle was under the influence of alcohol "[i]f there were at that time 0.10% or more by weight of alcohol in the person's blood."
The trial court made the following comments in denying defendant's motion for directed verdict:
"There was some testimony by a witness that observed him some hour or thirty minutes before the accident and talked with him, and he did not appear to be under the influence of alcohol; and that also the fact of the proximate cause of the accident is a jury question, whether or not it was the cause of the accident, the alcohol, whether that was the proximate cause, proximate contributor to the accident; whether or not it was a fact there were no lights; whether or not that was a proximate cause of the accident I think is a jury question and not for me to decide. Therefore, I cannot direct a verdict.
"I'm going to give the jury instructions that driving under the influence of alcohol is negligence as a matter of law. If they find he was driving under the influence of alcohol, that constitutes negligence as a matter of law. However, it would have to be proven that was the proximate cause of [or] proximate contributor to the accident. That would be a jury question...."
The trial court correctly observed that any contributory negligence of plaintiff's decedent would have to be a proximate cause of the accident before it would bar recovery, and that the question of proximate cause is one for the jury. Cox v. Miller, 361 So.2d 1044 (Ala.1978); Murphree v. Campbell, 266 Ala. 501, 97 So.2d 892 (1957).
Hallman also argues that the trial court erred in denying his motion for new trial on the ground that the verdict was against the great weight and preponderance of the evidence. A jury verdict is presumed correct, and no ground for a new trial is more carefully scrutinized or more rigidly limited than an assertion that a jury verdict is against the weight of the evidence. A trial court's denial of a motion for new trial strengthens the presumption that the verdict is correct, and will not be reversed unless it is plainly and palpably wrong. Osborne v. Cobb, 410 So.2d 396 (Ala.1982); Maffett v. Roberts, 388 So.2d 972 (Ala.1980); Dean v. Mayes, 274 Ala. 88, 145 So.2d 439 (1962).
Rev. Emmitt Summerville, the deceased's father, testified on direct examination that he went to the scene of the accident and saw there were no lights on the boat trailer at all. The state trooper who investigated the scene testified on rebuttal that there was no wire or light on the boat trailer when he first saw it, but that when he saw *628 it again later a wire had been loosely strung on the trailer and draped over the fender. The trooper testified that he was told the light had been knocked off, but that the scratch marks on the fender appeared to have been made by a screwdriver or a knife. This evidence would support a jury finding that there was no light on the trailer at the time of the accident and, furthermore, that the defendant attempted to fabricate evidence that there had been. Clark Stamps, the owner of the boat and trailer, was riding with Hallman at the time of the accident. He testified that the light was on the trailer before the accident and was operational, but was knocked off by the impact. He testified that debris from the accident was put into the boat and that the light was in the boat when he looked the next day. Hallman's testimony corroborated this account. Nevertheless, this evidence presented a question of the credibility of witnesses to be resolved by the factfinder.
The deceased's mother testified that she heard the motorcycle as it approached the bridge, about a quarter of a mile from her house, and that it was dark at the time. The deceased's sister testified that he had passed her on his motorcycle shortly before the accident, that it was dark enough that she needed her headlights to see, and that her brother had the motorcycle's lights on.
The state trooper who investigated the scene testified that, when he left home after receiving notification of the accident, it was "getting dark," and that when he arrived at the scene at 7:17, it was dark. He also testified that he went back to the accident scene the next night at 7:00 and it was not dark enough to require headlights. Defendant's evidence further tended to indicate that it was not dark at the time of the accident, but, again, the evidence presented a jury question as to whether it was dark enough at the time of the accident that the trailer would have been difficult to see without lights.
There was evidence that the deceased was speeding. For example, Allen Stamps was in a pickup truck behind the vehicle towing the boat. He testified that the motorcycle passed him a short distance before the accident site and he estimated its speed at 70-75 miles per hour. Given the evidence that Hallman was driving over the bridge at a very slow speed in low light conditions without a light on the trailer, the jury verdict is sustainable on the ground that any contributory negligence of the deceased did not proximately cause the accident. The record shows, therefore, that the verdict was not so contrary to the great weight and preponderance of the evidence that the trial court erred in declining to set it aside.
During closing argument, plaintiff's counsel remarked on the failure of the defense to produce the light that was supposedly in the boat the next day. Defendant objected, but the trial court overruled, saying, "I leave it to the jury to determine from the weight of the evidence." Defendant compares this argument to a comment on the failure of a party to call a witness, citing Otis Elevator Co. v. Stallworth, 474 So.2d 82 (Ala.1985); Estis Trucking Co. v. Hammond, 387 So.2d 768 (Ala.1980); and Atlantic Coast Line R. Co. v. Larisey, 269 Ala. 203, 112 So.2d 203 (1959). The comparison is not apt. Both Hallman and Clark Stamps testified that the light was in the boat the next day. Plaintiff's counsel asked Stamps where the light was. Stamps answered that he did not know, but that it might be in his garage or it might have gone with the boat when he sold it. It was in Hallman's interest to produce the light as evidence, and his failure to do so could properly be considered by the jury in weighing the evidence. The trial court did not commit reversible error in overruling the objection.
Hallman's argument that the verdict was excessive and was the result of bias and prejudice is not well taken. Damages in wrongful death actions are punitive, and the verdict here is not so high as to indicate that it was a result of passion or prejudice.
*629 For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., dissents.
TORBERT, Chief Justice (dissenting).
I respectfully dissent. I would reverse the trial court's denial of the defendant's motion for new trial.
The defendant filed a motion for new trial, alleging as one of the grounds that the verdict was against the great weight and preponderance of the evidence. The trial court denied this motion. In Hodges & Co. v. Albrecht, 288 Ala. 281, 259 So.2d 829 (1972), this Court stated the applicable scope of review with regard to a new trial granted on the grounds that the verdict is against the great weight of the evidence:
"`It is the rule that where the verdict is contrary to the great preponderance of the evidence, defendant, on due motion, is entitled to a new trial, though the court was not in error in declining the affirmative charge [a directed verdict]. The scintilla of evidence rule does not apply as to the ruling on the motion. [Citations omitted.]'
"However, we also point out that, `"* * * This Court has held many times that verdicts are presumed to be correct and no ground of a motion for a new trial is more carefully scrutinized than that the verdict is against the weight of the evidence. [Citation omitted.] Furthermore, ... the presumption in favor of the correctness of the verdict is strengthened when a new trial is denied by the court."`"
288 Ala. 281, 285-86, 259 So.2d 829, 832 (as quoted in Walker v. Caldwell, 348 So.2d 1049, at 1051 (Ala.1977).
Having reviewed all of the evidence presented in this case, I conclude that the verdict rendered by the jury was against the great weight of the evidence. At trial, the plaintiff's theory of negligence was that the defendant's failure to have the boat trailer he was towing properly lighted proximately caused the decedent's death. The plaintiff's case-in-chief consisted of the testimony of four witnesses. None of the four witnesses observed the trailer the defendant was towing prior to the accident, nor did they observe the accident itself. Only one of the witnesses, the decedent's father, testified that the defendant's lights were not on at the time he reached the accident scene. No time frame was established to indicate how long it was after the accident took place before the decedent's father reached the scene. Each of the plaintiff's witnesses testified that it was "dark" at the approximate time the accident occurred.
During the presentation of the defendant's case-in-chief, the defendant testified that, although it was not completely dark, he had his parking lights on prior to and at the time of the accident. The defendant and his brother-in-law, who was accompanying the defendant at the time of the accident, testified that the boat trailer was equipped with a functional taillight and that the trailer had been electrically wired to the truck. The defendant's evidence also indicated that the blood alcohol level of the decedent at the time of the accident was .28 percent. A toxicologist from the Alabama Department of Forensic Sciences testified that the .28 percent level of alcohol in the deceased's blood was "what actually reached the blood stream and was capable of affecting him." She further testified that this level of blood alcohol would severely reduce visual acuity, have an effect on depth perception, and make a person somewhat "out of touch" with his environment. A medical doctor echoed the toxicologist's testimony and added that a blood alcohol level of .28 percent would diminish muscular coordination and distort judgment. The state trooper who investigated the accident testified that there was no evidence that the operator of the motorcycle attempted to stop or attempted to avoid running into the back of the boat. Further, *630 there was testimony that the northbound lane of Highway 39 was free of obstructions and that the plaintiff's decedent had ample room and opportunity to pass the defendant without peril.
In rebuttal, the plaintiff called the state trooper who investigated the accident. The trooper testified that on the evening of the accident he did not see a light on the boat trailer or any wires on the trailer to provide electricity to a light. He further testified that on the day after the accident, he went to the place where the boat was stored and looked at it; he said he saw an electrical wire running from the front of the trailer to the fender, but did not see a trailer light. The defendant's evidence tended to indicate that the trailer light had been knocked off in the collision, but the trooper testified that the scratches he observed on the fender appeared to have been made by a screwdriver rather than from the force of a collision.
In King Coal Co. v. Garmon, 388 So.2d 886, 890 (Ala.1980), this Court, in ruling on a motion for new trial, held that "when a verdict is against the weight or preponderance of the evidence, and is wrong and unjust, this Court may grant a new trial." It is my opinion that the verdict in this case is against the great weight and preponderance of the evidence. First, only one witness, the decedent's father (the plaintiff himself), testified that the defendant did not have his lights on at the time he reached the accident scene. However, no testimony was ever elicited as to how long it was after the accident occurred before the decedent's father went to the scene. Furthermore, there was never any testimony from any witness that the defendant did not have his lights on prior to or at the time of the accident. Second, both the state trooper and the deputy sheriff who investigated the accident testified that, at the time they arrived at the accident scene, it had not become dark enough that lights would be required by law. Finally, the evidence was uncontradicted that the blood alcohol level of the decedent at the time of the accident was .28 percent. This level of blood alcohol in a person who drove into the rear of a boat and trailer, who apparently made no attempt to stop his motorcycle before the collision, and who had a clear lane in which he could have passed the defendant's truck and trailer, would have to have been a cause contributing to the person's death. Therefore, I am convinced that the finding that the defendant negligently caused the decedent's death and that the decedent was not contributorily negligent is "wrong and unjust." King Coal Co. v. Garmon, 388 So.2d at 890. Accordingly, I think the defendant's motion for new trial should have been granted.