This wrongful death action stems from a collision between a motorcycle driven by plaintiff's decedent and a boat and trailer being towed by defendant's truck. The trial court entered judgment on the jury verdict awarding plaintiff $125,000. Defendant argues that the trial court should have granted a directed verdict on the ground of contributory negligence or a new trial because the verdict was contrary to the great weight and preponderance of the evidence. Defendant also argues that the *Page 627 
trial court committed reversible error in not sustaining an objection and issuing curative instructions during plaintiff's closing argument, and that the verdict was excessive and a result of bias and prejudice on the part of the jury.
On October 7, 1983, Burnard Summerville was driving his motorcycle south on Highway 39 in Greene County. As he crossed the bridge over the Tombigbee River about 6:30 or 7:00 p.m., he ran into the rear of the boat on the trailer being towed by defendant, William Elbert Hallman. Burnard died immediately.
Hallman testified that this was the first time he had driven over the bridge since it had been reopened, and that he was driving about ten miles per hour and looking at the bridge. The evidence was in dispute as to whether the trailer had a light on it and whether it was dark enough for lights to be required for visibility. There was uncontradicted evidence that a test on a blood sample from the deceased showed the alcohol content of his blood to be 0.28%, but a witness testified that he saw the deceased shortly before the accident and that he did not appear to be intoxicated.
Hallman argues that the trial court should have granted his motion for directed verdict because the alcohol content of the deceased's blood established contributory negligence as a matter of law. Code 1975, § 32-5A-194, establishes a presumption that a person driving a vehicle was under the influence of alcohol "[i]f there were at that time 0.10% or more by weight of alcohol in the person's blood."
The trial court made the following comments in denying defendant's motion for directed verdict:
 "There was some testimony by a witness that observed him some hour or thirty minutes before the accident and talked with him, and he did not appear to be under the influence of alcohol; and that also the fact of the proximate cause of the accident is a jury question, whether or not it was the cause of the accident, the alcohol, whether that was the proximate cause, proximate contributor to the accident; whether or not it was a fact there were no lights; whether or not that was a proximate cause of the accident I think is a jury question and not for me to decide. Therefore, I cannot direct a verdict.
 "I'm going to give the jury instructions that driving under the influence of alcohol is negligence as a matter of law. If they find he was driving under the influence of alcohol, that constitutes negligence as a matter of law. However, it would have to be proven that was the proximate cause of [or] proximate contributor to the accident. That would be a jury question. . . ."
The trial court correctly observed that any contributory negligence of plaintiff's decedent would have to be a proximate cause of the accident before it would bar recovery, and that the question of proximate cause is one for the jury. Cox v.Miller, 361 So.2d 1044 (Ala. 1978); Murphree v. Campbell,266 Ala. 501, 97 So.2d 892 (1957).
Hallman also argues that the trial court erred in denying his motion for new trial on the ground that the verdict was against the great weight and preponderance of the evidence. A jury verdict is presumed correct, and no ground for a new trial is more carefully scrutinized or more rigidly limited than an assertion that a jury verdict is against the weight of the evidence. A trial court's denial of a motion for new trial strengthens the presumption that the verdict is correct, and will not be reversed unless it is plainly and palpably wrong.Osborne v. Cobb, 410 So.2d 396 (Ala. 1982); Maffett v. Roberts,388 So.2d 972 (Ala. 1980); Dean v. Mayes, 274 Ala. 88,145 So.2d 439 (1962).
Rev. Emmitt Summerville, the deceased's father, testified on direct examination that he went to the scene of the accident and saw there were no lights on the boat trailer at all. The state trooper who investigated the scene testified on rebuttal that there was no wire or light on the boat trailer when he first saw it, but that when he saw *Page 628 
it again later a wire had been loosely strung on the trailer and draped over the fender. The trooper testified that he was told the light had been knocked off, but that the scratch marks on the fender appeared to have been made by a screwdriver or a knife. This evidence would support a jury finding that there was no light on the trailer at the time of the accident and, furthermore, that the defendant attempted to fabricate evidence that there had been. Clark Stamps, the owner of the boat and trailer, was riding with Hallman at the time of the accident. He testified that the light was on the trailer before the accident and was operational, but was knocked off by the impact. He testified that debris from the accident was put into the boat and that the light was in the boat when he looked the next day. Hallman's testimony corroborated this account. Nevertheless, this evidence presented a question of the credibility of witnesses to be resolved by the fact-finder.
The deceased's mother testified that she heard the motorcycle as it approached the bridge, about a quarter of a mile from her house, and that it was dark at the time. The deceased's sister testified that he had passed her on his motorcycle shortly before the accident, that it was dark enough that she needed her headlights to see, and that her brother had the motorcycle's lights on.
The state trooper who investigated the scene testified that, when he left home after receiving notification of the accident, it was "getting dark," and that when he arrived at the scene at 7:17, it was dark. He also testified that he went back to the accident scene the next night at 7:00 and it was not dark enough to require headlights. Defendant's evidence further tended to indicate that it was not dark at the time of the accident, but, again, the evidence presented a jury question as to whether it was dark enough at the time of the accident that the trailer would have been difficult to see without lights.
There was evidence that the deceased was speeding. For example, Allen Stamps was in a pickup truck behind the vehicle towing the boat. He testified that the motorcycle passed him a short distance before the accident site and he estimated its speed at 70-75 miles per hour. Given the evidence that Hallman was driving over the bridge at a very slow speed in low light conditions without a light on the trailer, the jury verdict is sustainable on the ground that any contributory negligence of the deceased did not proximately cause the accident. The record shows, therefore, that the verdict was not so contrary to the great weight and preponderance of the evidence that the trial court erred in declining to set it aside.
During closing argument, plaintiff's counsel remarked on the failure of the defense to produce the light that was supposedly in the boat the next day. Defendant objected, but the trial court overruled, saying, "I leave it to the jury to determine from the weight of the evidence." Defendant compares this argument to a comment on the failure of a party to call a witness, citing Otis Elevator Co. v. Stallworth, 474 So.2d 82
(Ala. 1985); Estis Trucking Co. v. Hammond, 387 So.2d 768 (Ala. 1980); and Atlantic Coast Line R. Co. v. Larisey, 269 Ala. 203,112 So.2d 203 (1959). The comparison is not apt. Both Hallman and Clark Stamps testified that the light was in the boat the next day. Plaintiff's counsel asked Stamps where the light was. Stamps answered that he did not know, but that it might be in his garage or it might have gone with the boat when he sold it. It was in Hallman's interest to produce the light as evidence, and his failure to do so could properly be considered by the jury in weighing the evidence. The trial court did not commit reversible error in overruling the objection.
Hallman's argument that the verdict was excessive and was the result of bias and prejudice is not well taken. Damages in wrongful death actions are punitive, and the verdict here is not so high as to indicate that it was a result of passion or prejudice. *Page 629 
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
MADDOX, JONES, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., dissents.